UNITED STATES of America,
Appellant,

v.

(UNDER SEAL), Appellee.

**In re ANTITRUST GRAND JURY
INVESTIGATION.**

No. 83–1138.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1983.

Decided Aug. 10, 1983.

Neil R. Ellis, Dept. of Justice, Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Robert B. Nicholson, Peter A. Mullin and James A. Morgulec, Dept. of Justice, Washington, D.C., on brief), for appellant.

William W. Taylor, III, Washington, D.C. (Stephen H. Glickman, Zuckerman, Spaeder, Moore, Taylor & Kolker, Washington, D.C., on brief), for appellee.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

The district court quashed a grand jury subpoena on the ground that the prosecutor improperly sought to have the witness immunized and to compel him to testify in order to coerce a plea bargain from a relative of the witness. The district court also found that enforcement of the subpoena would aid the grand jury in its investigation.

The government has appealed, and we reverse.

I.

Under the guidance of the Antitrust Division of the Department of Justice, a grand jury was investigating bid rigging in the road building industry in Virginia. Appellee was subpoenaed to appear before the grand jury in November 1981, after the Division was informed that a corporation owned and managed by him, his brother and his cousin had been involved in bid rigging.[1] When the government learned that appellee would refuse to testify on the basis of his privilege against self-incrimination, an Assistant Attorney General of the United States authorized an application to compel his testimony under a grant of immunity as provided in 18 U.S.C. § 6002.

Appellee continued to resist, representing that his testimony against family members would cause them "immeasurable suffering" and "place him in an impossible conflict with his religious and moral convictions." He also claimed that the government was violating the policy of the Department of Justice not to compel the testimony of a witness who is a close family relative of the person whose conduct the grand jury is investigating except in "exceptional circumstances." The upshot of

appellee's protest was that the government concluded not to require him to testify at that time, but to pursue other potential sources of information.

In an unrelated proceeding, it was judicially determined that the grand jury conducting the investigation was improperly constituted. A new grand jury was convened in September 1982.

On October 15, 1982, a new grand jury subpoena was issued and new administrative proceedings to authorize a request for immunity were begun.[2] Appellee again resisted the subpoena and made plain his position that he would refuse to testify even under a grant of immunity. In conference, the government attorney conducting the investigation, told counsel for the corporation that appellee would be excused from testifying if the corporation and one individual who was a relative of appellee would plead guilty to a felony to be selected by the government. There was evidence that, at this time, other potential sources of information had not been pursued, and the government attorney knew that the government lacked evidence to request an indictment of the corporation or appellee's relatives. The government attorney also conceded that he thought that appellee's relative would plead guilty rather than see appellee jailed for contempt. He further admitted that when he sought approval from his superiors to seek immunity for appellee he had advised them that, notwithstanding appellee's consistent position, there was no likelihood that appellee would commit contempt rather than to obey a court order to testify.

The offer to accept pleas of guilty in exchange for excusing appellee from testifying was not accepted; and when the government's formal application for immu-

1. To preserve to the extent possible the secrecy of the proceedings of an existing grand jury, the parties will not be named and only so much of the facts as are necessary to the decision will be disclosed.

2. As a result of appellee's counsel's efforts to have the policy of the Department of Justice against requiring adverse familial testimony applied so as to deny permission to seek to immu-

nize appellee, a policy interpretation issued, ruling that the policy applies when the witness gains knowledge of illegal conduct through a familial relationship but not when the knowledge is gained through a business relationship such as a family business. Thus it was concluded that appellee could be compelled to testify as to information acquired in his corporate capacity.

nity was granted,[3] appellee moved to quash the subpoena.

After an evidentiary hearing, the district court granted the motion to quash. It found as a matter of fact that the Antitrust Division was engaged in a good faith and laudable investigation, that there was reason to believe that the corporation and its principals had engaged in bid rigging, and that the witness had relevant and material evidence to present to the grand jury. But it also found that one of the government's purposes in seeking the subpoena was to coerce one of the witness's relatives into a plea bargain, because, as the district court further found, no one could have thought that the witness "was not likely to commit contempt rather than obey the Court's order [to testify]." The district court found further misconduct and bad faith on the part of the government, because it had not exhausted other sources before seeking the second subpoena, and because it had devised a "bizarre" interpretation of its policy against requiring familial disclosures in order to turn aside the witness's objections.

In this appeal, the government contends that the district court legally erred in quashing the subpoena and, further, that its findings of fact with regard to misconduct and bad faith on the part of the government were clearly erroneous. Because we agree with the government's first contention, we do not reach the other.

## II.

Even if we assume that the government sought the subpoena for an improper purpose,[4] the finding that it was also sought for a legitimate purpose is not clearly erroneous. The record fully supports the factual findings that there was reason to believe that there had been bid rigging, that the corporation and its principals were implicated and that the witness had relevant evidence to give to the grand jury. This, we think, is reason enough not to quash the subpoena.

The principles that the powers of the grand jury may be used only to further its investigation, and that a court may quash a subpoena used for some other purpose, are both well recognized. The former rests on the simple, but fundamental, concept that the grand jury serves an independent investigatory function and is "not meant to be the private tool of the prosecutor." *United States v. Fisher,* 455 F.2d 1101, 1105 (2 Cir.1972). Thus, practices which do not aid the grand jury in its quest for information bearing on the decision to indict are forbidden. This includes use of the grand jury by the prosecutor to harass witnesses[5] or as a means of civil[6] or criminal[7] discovery. In a proper case, this prohi-

---

**3.** The policy interpretation mentioned in n. 2 was that of the Antitrust Division, and it was apparently at odds with one of the Criminal Division, which drew no distinction between familial relationships and business relationships as the source of knowledge of incriminating evidence but which took the position that cousins are not close family relatives. To avoid inconsistency within the department, the government sought immunity for appellee and his brother, but not for his cousin.

**4.** We call attention to the fact that we have recently held that no privilege protects a witness from being compelled to give a grand jury evidence against his family. *United States v. Jones,* 683 F.2d 817 (4 Cir.1982) (son may be compelled to testify against father before grand jury). *Accord In re Grand Jury Proceedings,* 647 F.2d 511 (5 Cir.1981) (daughter may be compelled to testify against mother and stepfather). Nor may a witness assert a legal right grounded upon the policies stated in the United States' Attorney Manual. "The guidelines . . . are directed to the handling of requests by United States Attorneys within the Department of Justice for permission to seek orders granting immunity. They are not directed to the procedural or substantive rights of prospective witnesses." *In re Tierney,* 465 F.2d 806, 813 (5 Cir.1972).

**5.** *See, e.g., Branzburg v. Hayes,* 408 U.S. 665, 707–08, 92 S.Ct. 2646, 2669–70, 33 L.Ed.2d 626 (1972); *In re Poutre,* 602 F.2d 1004 (1 Cir. 1979); *Ealy v. Littlejohn,* 569 F.2d 219 (5 Cir. 1979).

**6.** *United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *In re Grand Jury Subpoenas, April 1978,* 581 F.2d 1103, 1108 (4 Cir.1978).

**7.** *In re Grand Jury Proceedings,* 632 F.2d 1033 (3 Cir.1980).

bition should as well include the use of a grand jury subpoena to coerce a plea bargain when that use has no relation to a proper purpose of the grand jury. The power to quash a subpoena exists in the district court of the district where the grand jury sits by reason of its inherent authority to prevent misuse of its own process.[8]

■ What governs the decision of this case is the polestar that a court should not intervene in the grand jury process absent a compelling reason. *United States v. Dionisio,* 410 U.S. 1, 16–18, 93 S.Ct. 764, 772–773, 35 L.Ed.2d 67 (1973).[9] There is insufficient reason to justify the grant of a motion to quash where, as here, the sought-after testimony is of demonstrated relevancy to the grand jury's investigation.

■ Central to our decision is the district court's finding that it was likely that the petitioner "had relevant and material evidence to present to the Grand Jury." Once it is shown that a subpoena might aid the grand jury in its investigation, it is generally recognized that the subpoena should issue even though there is also a possibility that the prosecutor will use it for some purpose other than obtaining evidence for the grand jury.[10] For example, we have held that an adequate showing is made to justify the issuance of a subpoena if the United States Attorney avers that it is sought in good faith to aid the grand jury's investigation even though circumstances suggest that it might also be used as a means for civil discovery. *In re Grand Jury Subpoenas, April 1978,* 581 F.2d 1103 (4 Cir.1978). Similarly, it has been held that a subpoena, issued after an indictment was returned and allegedly sought by the prosecutor to obtain evidence for a criminal trial, should be quashed only if that is shown to be the "sole or dominant purpose of seeking the evidence." Conversely, "a good faith inquiry into other charges within the scope of the grand jury's lawful authority is not prohibited even if it uncovers further evidence against an indicted person." *In re Grand Jury Proceedings,* 632 F.2d 1033,

**8.** The subpoena, of course, is an order by the district court to a witness to appear before the grand jury. *See United States v. Dionisio,* 410 U.S. 1, 12, 93 S.Ct. 764, 770, 35 L.Ed.2d 67 (1973) ("Grand juries are subject to judicial control and subpoenas to motions to quash."); *Rea v. United States,* 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233 (1956) (commenting upon a court's "inherent authority to consider and decide questions arising before it concerning an alleged unreasonable exertion of authority in connection with the execution of the process of the court.") The authority to quash an "unreasonable or oppressive" subpoena duces tecum is expressly provided by the Federal Rules of Criminal and Civil Procedure. Fed.R.Crim.P. 17(c); Fed.R.Civ.P. 45(b).

**9.** Justice White explained the importance of the grand jury's power to subpoena freely witnesses in *Branzburg supra,* Hayes, 408 U.S. at 688, 92 S.Ct. at 2660 (1972). He stated:

Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will

be found properly subject to an accusation of crime." *Blair v. United States,* 250 U.S. 273, 282, 63 L.Ed. 979, 983, 39 S.Ct. 468 [471] (1919). Hence, the grand jury's authority to subpoena witnesses is not only historic, id., at 279–281 [39 S.Ct. at 470–471] 63 L.Ed. at 981–983, but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that "the public ... has a right to every man's evidence," except for those persons protected by a constitutional common-law, or statutory privilege is particularly applicable to grand jury proceedings. (citations omitted)

**10.** In the rare cases where a witness has been granted relief from the grand jury's process it is usually predicated upon a finding that nothing of relevance will be obtained by enforcing the process. *See Ealy v. Littlejohn,* 569 F.2d 219 (5 Cir.1978) (First Amendment protects political association from inquiry by the grand jury into its financing and membership when that bears no relation to the subject matter of the investigation); *Bursey v. United States,* 466 F.2d 1059, 1079–81 (9 Cir.1972) (protecting witness from abusive, repetitious questioning found to serve no useful purpose); *Brown v. United States,* 245 F.2d 549, 555 (8 Cir.1957) (perjury conviction may not be grounded upon false statements made on matters immaterial to the grand jury's investigation).

1040–41 (3 Cir.1980), and cases cited therein.

Moreover, the importance of an alternative remedy has been recognized in several decisions refusing to quash a subpoena despite allegations that it was being used by the prosecutor to collect evidence for a civil proceeding on the ground that disclosure could be prevented under Rule 6(e) or cured by suppression of the evidence in later civil proceedings. *In re Grand Jury Subpoenas, April 1978, supra; In re Special March 1974 Grand Jury,* 541 F.2d 166, 170–71 (7 Cir. 1976); *In re Grand Jury Subpoena Duces Tecum,* 520 F.Supp. 253 (S.D.Tex.1981).

Here the alleged abuse of the grand jury process is an apparent effort by the United States Attorney to coerce a plea bargain from a relative of the witness by threatening the witness with imprisonment for contempt if he refuses to testify against his relatives, something he has expressed great reluctance to do. If the resulting plea is truly coerced, it cannot properly be accepted under Rule 11(d) of the Federal Rules of Criminal Procedure. Indeed, at the Rule 11 proceeding, it would be incumbent upon the district court to ascertain the nature of the plea discussions held between the defendant, his counsel and the United States Attorney. Fed.R.Crim.P. 11 advisory committee note, 1974 amendment. If the district court determined that improper persuasion had been used by the prosecutor to compel the plea, the district court could not accept it, or if the issue was raised later, collateral relief under 28 U.S.C. § 2255 would be available. *See United States v. Nuckols,* 606 F.2d 566 (5 Cir.1979). Thus remedies exist for the abuse alleged here if it is in fact real. The existence of such remedies reinforces our view that the district court's grant of the motion to quash the subpoena was legal error.

Since we find erroneous the only basis assigned by the district court for quashing the subpoena,[11] we reverse its order.

REVERSED.

---

**11.** Before the district court the petitioner also argued that the subpoena should be quashed because the grant of immunity was not coextensive with his Fifth Amendment privilege against self-incrimination. The issue was never addressed by the district court and the petitioner does not press it here as an alternative ground in support of that court's order even though the United States raised the issue in its brief. He has thus abandoned the argument and therefore we will not address it. *See Carolinas Farm & Power Equipment Dealers v. United States,* 699 F.2d 167, 169 n. 2 (4 Cir. 1983).