**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: GRAND JURY SUBPOENA

UNDER SEAL; UNDER SEAL 2,
Petitioners-Appellees,                                              No. 98-4841

v.

UNITED STATES OF AMERICA,
Respondent-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(MISC-98-92-MU)

Argued: March 3, 1999

Decided: April 29, 1999

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Ervin and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** David S. Kris, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellant. Thomas Louis Patten,
LATHAM & WATKINS, Washington, D.C.; E. Fitzgerald Parnell,
III, POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for

Appellees. **ON BRIEF:** Faith S. Hochberg, United States Attorney, Mark R. Winston, Assistant United States Attorney, Mark T. Calloway, United States Attorney, Frank D. Whitney, Assistant United States Attorney, Brian L. Whisler, Assistant United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Jennifer C. Archie, LATHAM & WATKINS, Washington, D.C., for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

The United States appeals a decision by the federal district court to quash a subpoena in an ongoing criminal investigation on the ground that the sole purpose of the subpoena was to obtain discovery for a parallel civil <u>qui tam</u> proceeding. Because the district court's findings as to the purpose of the subpoena were not clearly erroneous, we affirm.

I.

This case involves allegations of potentially fraudulent pricing practices by Baker & Taylor, Incorporated (B&T), the nation's largest wholesale bookseller. On June 1, 1995, two private parties -- Ronald Thornburg, a former employee of B&T, and Robert Costa, a public librarian in Richmond, Virginia[1]-- filed a sealed <u>qui tam</u> civil complaint in the United States District Court for the Northern District of California against B&T and its former corporate parent, W.R. Grace & Company - Connecticut ("Grace"), alleging that B&T fraudulently overcharged institutional customers, including federally funded libraries, in violation of the civil provisions of the False Claims Act. <u>See United States ex rel</u>. <u>Costa</u> v. <u>Baker & Taylor, Inc.</u>, 955 F. Supp. 1188, 1189 (N.D. Cal. 1997). From the date of filing until January

_____

[1] Thornburg has since been dismissed from the case, leaving only Costa as relator in the <u>qui tam</u> action. <u>See</u><u>United States ex rel</u>. <u>Costa</u> v. <u>Baker & Taylor, Inc.</u>, No. C-95-1825-VRW, 1998 WL 230979, at *4 (N.D. Cal. March 20, 1998).

2

1997, the government conducted an investigation under seal to determine whether or not to intervene in the action, during which the government amassed thousands of documents and interviewed numerous witnesses. The investigation was spearheaded by Dee Lord, a lawyer in the Commercial Litigation Branch of the Civil Division of the Department of Justice, and Marty McGuire, a special agent in the Defense Criminal Investigative Service (DCIS), a branch of the Office of the Inspector General at the Department of Defense. In January 1997, after the district court decided to lift the seal on the complaint, the government formally intervened in the case.

On February 8, 1996, the Department of Justice asked DCIS to commence a criminal investigation against B&T to determine whether B&T's allegedly fraudulent pricing practices violated any federal criminal statutes. Between May 1996 and August 1998, officials working on the civil case intermittently met with their counterparts on the criminal case. Notably, McGuire participated in the criminal investigation, as well as the civil investigation. During this period, however, little progress was made on the criminal case, and indeed the statute of limitations appears to have run on a number of potential criminal charges. In early 1998, Mark Winston, Assistant United States Attorney for the District of New Jersey, took over as the prosecutor responsible for the criminal case. He was assisted by Frank Whitney, Assistant United States Attorney for the Western District of North Carolina.[2]

In July 1998, the government issued a subpoena in the civil case against Gerald Garbacz, president of B&T. Attached to the subpoena was a request for a list of records relating to B&T's billing practices, designated as "Attachment A." On July 31, 1998, B&T and Grace objected to this subpoena and requested that discovery be stayed. The district court scheduled a telephone hearing for August 6, 1998, in order to rule on the objection.

Events in the civil and criminal cases came to a head on August 6. On the morning of August 6, members of the civil and criminal teams,

_____

[2] The criminal investigation proceeded simultaneously in New Jersey and North Carolina because B&T maintained corporate offices in both locations.

3

including Lord, McGuire, and Winston, met in Washington to exchange information and discuss how to proceed in the criminal case.**3** That afternoon, during the scheduled telephone conference in the civil case -- in which Lord participated -- the district court granted B&T and Grace's request to stay discovery in that case, pending the resolution of various motions by states to intervene as plaintiffs.**4**

With discovery in the civil case stayed, members of the criminal team, including Whitney and McGuire, met on August 26 and decided to begin using a grand jury to assist in the criminal investigation. On September 11, Whitney directed McGuire to prepare a criminal subpoena for Thomas Neblett, a B&T salesman with responsibility for sales to schools and libraries. In preparing the subpoena, McGuire attached a photocopy of Attachment A, the same list of documents that he had attached to the Garbacz subpoena in the civil case. The subpoena was issued on September 16 and duly served. No other criminal subpoenas were served.

Upon learning about the Neblett subpoena, counsel for Grace contacted Lord on October 7 and informed her of Grace's intention to seek sanctions against the government for its allegedly improper use of a criminal subpoena to obtain discovery for a civil case. On October 8, the day after she learned that Grace knew about the subpoena, Lord wrote to McGuire recommending that he be "walled off" from any further involvement in the civil proceedings. On October 19, B&T and Grace filed motions in the United States District Court for the Western District of North Carolina to intervene in the criminal grand jury proceedings and to quash the Neblett subpoena. The district court granted both motions, but permitted the government to reapply for the subpoena once the stay in the civil proceeding was lifted.

The government then moved to unseal the pleadings in the criminal case in order to allow officials from the civil team to review the allegations of misconduct against them. After the district court granted

_____

**3** Whitney participated in the meeting by telephone.
**4** The district court has yet to rule on the motions to intervene, and the stay therefore remains in force.

4

the motion, the government then moved for reconsideration of the district court's order quashing the subpoena, attaching affidavits from Lord, McGuire, Winston, and Whitney, in which they testified that members of the civil team did not know about, and were not involved in, the decision to issue the subpoena. The district court denied the motion. From the district court's original order quashing the subpoena and its subsequent order denying the motion for reconsideration, the government now appeals.

II.

As a preliminary matter, we must dispose of appellee's motion to dismiss for lack of subject matter jurisdiction. Although we have frequently reviewed district court orders quashing subpoenas, see, e.g., In re Grand Jury Proceedings No. 92-4, 42 F.3d 876, 877 (4th Cir. 1994); United States v. Under Seal, 757 F.2d 600, 602 (4th Cir. 1985); United States v. Under Seal, 745 F.2d 834, 835 (4th Cir. 1984), vacated on other grounds sub nom. United States v. Doe, 471 U.S. 1001 (1985); United States v. Under Seal, 714 F.2d 347, 348 (4th Cir. 1983), we have never discussed the source of our jurisdiction to do so, except in the 1984 Under Seal case, and then only in a one-sentence footnote. There, we stated simply that"[o]ur jurisdiction is based on 18 U.S.C. § 3731," without further elaboration. Under Seal, 745 F.2d at 835 n.1.

Appellant contends that jurisdiction lies on two independent grounds: 18 U.S.C. § 3731, which provides jurisdiction for appeals by the United States from district court orders suppressing or excluding evidence in criminal proceedings, and 28 U.S.C.§ 1291, which provides jurisdiction generally for appeals from final district court decisions.

We begin with 18 U.S.C. § 3731. In relevant part, the statute reads:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney cer-

5

tifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

18 U.S.C. § 3731.**5** In candor, given the text of section 3731, we are less than convinced that this provision was actually intended to afford appellate jurisdiction to review an order quashing a grand jury subpoena. First, the phrase "a decision or order of a district court suppressing or excluding evidence," is most naturally (even if not exclusively) understood as an order in either a post-indictment, pretrial proceeding or the trial itself; that is, we do not often refer to the "suppression" or "exclusion" of evidence from a grand jury -- indeed, we do not even often have the occasion to do so. Second, the provision seems to presuppose (even if not necessarily so) a post-indictment decision, through its limitation to orders entered prior to the time that "the defendant" has been put in jeopardy, because, of course, only as to post-indictment orders is there a "defendant." Finally, that the United States Attorney must certify both "that the appeal is not taken for the purpose of delay" and "that the evidence is a substantial proof of a fact material in the proceeding" further tends to confirm that the statute was intended to afford an appeal right only from trial-related and actual trial orders, because these are requirements that seem to have little or no relevance in the context of a grand jury proceeding.

However, while we harbor doubts as to whether Congress intended section 3731 to extend to appeals from orders quashing grand jury proceedings, there is no question that, even though it was conclusory, our footnote statement in Under Seal that section 3731 provided jurisdiction to review the order quashing the subpoena in that case consti-

_____

**5** Appellant alternatively contends that jurisdiction lies under a different provision of 18 U.S.C. § 3731, which grants jurisdiction over any appeal from a district court order "dismissing an indictment or information," without any certification requirement. Appellant contends that the district court's order quashing the subpoena would effectively render it impossible to obtain an indictment against B&T. Even assuming that this is the case, we do not believe that this provision of section 3731 can be read to extend to cases in which the mere effect of a district court order is to render it impossible to obtain an indictment.

6

tuted a holding of the court. Moreover, albeit also without an extended discussion of the statutory text, our sister circuits that have considered the issue have come to the same conclusion concerning the reach of section 3731. See, e.g., In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 914 (8th Cir.), cert . denied sub nom. Office of President v. Office of Independent Counsel , 521 U.S. 1105 (1997); In re Kiefaber, 774 F.2d 969, 972-73 (9th Cir. 1985), vacated on other grounds, 823 F.2d 383 (9th Cir. 1987); In the Matter of Grand Jury Empanelled February 14, 1978, 597 F.2d 851, 854-55 (3d Cir. 1979). Therefore, bound by our decision in Under Seal , we conclude that jurisdiction does lie under section 3731 to review the district court's order in this case.**6**

Notwithstanding the textual uncertainties in extending section 3731 to appeals from orders quashing subpoenas in grand jury proceedings, appellee does not really dispute that jurisdiction to review such orders ordinarily lies under section 3731. Instead, appellee makes the more circumscribed argument that jurisdiction should not lie in this particular case because appellant failed to obtain a timely certification from the district court. Appellee appears to contend that appellant should have filed its request for certification at least within the 30-day period specified for filing a notice of appeal, if not before filing the actual notice of appeal itself. The certification requirement in section 3731, however, is discretionary, not jurisdictional. See, e.g., United States v. Salisbury, 158 F.3d 1204, 1206 (11th Cir. 1998); United States v. Bailey, 136 F.3d 1160, 1163 (7th Cir. 1998); United States v. Smith, 135 F.3d 963, 967-68 (5th Cir. 1998); United States v. Shareef, 100 F.3d 1491, 1499 n.2 (10th Cir. 1996); United States v. Becker, 929 F.2d 442, 444-45 (9th Cir. 1991). And, in weighing the equities in this case, we find it dispositive that appellee suffered no prejudice from

_____

**6** Appellee argues that, even if jurisdiction is generally appropriate under section 3731, jurisdiction is inappropriate in this case because the district court's order quashing the subpoena was effectively only "temporary," leaving open the possibility that appellant could seek the subpoena again after the stay in discovery in the civil case was lifted. Whether or not the district court's order was effectively "temporary," however, is not relevant to the question whether the district court's order -- however "temporary" -- is an "order . . . suppressing or excluding evidence . . . in a criminal proceeding" for purposes of 18 U.S.C. § 3731.

any delay by appellant in obtaining a timely certification. To the contrary, appellant filed its request for certification only two weeks after the period for filing a notice of appeal had elapsed, and appellant in fact had already moved for an expedited appeal. Consequently, we agree with appellant that our exercise of jurisdiction under section 3731 is appropriate despite appellant's failure to obtain a timely certification, and therefore deny appellee's motion to dismiss.**7**

III.

Turning to the merits of the dispute, we begin by reviewing the district court's finding that appellant sought the subpoena in the criminal proceeding for the purpose of obtaining discovery for the civil proceeding. As both parties agree, a government prosecutor is barred, absent judicial approval, from sharing grand jury material with government civil attorneys. See Fed. R. Crim. P. 6(e)(2); United States v. Sells Eng'g, Inc., 463 U.S. 418, 435 (1983). As both parties also agree, we review the district court's finding regarding appellant's purpose in seeking the subpoena for clear error. See, e.g., United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985); see generally United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948) (elaborating on clear error standard).

The district court based its finding that appellant was engaging in a "thinly-veiled effort to circumvent" the civil discovery stay on essentially three grounds. J.A. at 280. First, the district court reasoned that it was more than "merely a coincidence" that the civil and criminal attorneys conferred on the same day as the judge in the civil case was scheduled to consider the civil discovery stay issue and actually did stay discovery, thus raising the inference that, during the conference, the attorneys agreed to circumvent any stay in the civil case by means of a grand jury investigation in the criminal case. Id. Second, the district court concluded that McGuire, the DCIS investigator, had not been "walled off" from the civil case. Id. Third, the district court reasoned that it was again more than "merely a coincidence" that the records sought in the criminal subpoena -- as listed in Attachment A

_____

**7** Because we conclude that jurisdiction lies under 18 U.S.C. § 3731, we need not reach the issue of whether jurisdiction alternatively lies under 28 U.S.C. § 1291.

8

-- were identical to those sought in the earlier civil subpoena, again raising the inference that the purpose of the criminal subpoena was to obtain evidence for the civil case. See id.

Although appellant challenges each of these grounds for the district court's finding, we conclude that these grounds, even if insufficient to do so individually, provide sufficient support for the district court's finding when taken as a whole to render the finding not clearly erroneous. Regarding the district court's conclusion concerning the timing of the conference between the civil and criminal attorneys, appellant contends that the civil and criminal attorneys could not possibly have agreed to circumvent the civil discovery stay during the course of their conference because the conference occurred earlier in the day than the conference in which the discovery stay was issued. This argument fails, however, because the mere fact that the conference of the civil and criminal attorneys occurred first is not necessarily dispositive: although the attorneys did not know for certain that discovery would be stayed at the time of their conference, they knew that a motion to stay discovery would be discussed in the subsequent conference, and therefore knew that there was a possibility that a stay would issue later that day. Appellant further contends that the conference between the civil and criminal attorneys was scheduled before the conference in which the civil discovery stay was issued was scheduled. This argument, however, is not necessarily dispositive either: although the fact that the morning conference was scheduled first would suggest that, at the time it was scheduled, there may have been no intention to discuss the effects of a potential civil discovery stay during that conference, it does not negate the possibility that, the afternoon conference having been scheduled, the civil and criminal attorneys did discuss the effects of a potential civil discovery stay in the course of the morning conference. The district court's inference that the civil and criminal attorneys agreed to circumvent a potential stay in the civil proceeding during their conference was therefore not implausible, even if it was not compelled.

Regarding the district court's conclusion concerning the "walling off" of McGuire, appellant points to Lord's letter to McGuire of October 8, 1998, which it says unequivocally indicates that McGuire had in fact been "walled off." We reject this argument, however, for the simple reason that, by October 8, 1998, it was too late for McGuire

9

to be walled off because the subpoena had already issued. The government introduced no evidence to suggest that McGuire was walled off before the subpoena had issued. Indeed, it appears that, as early as May 1996, an Assistant United States Attorney assigned to the criminal case, Alain Leibman, requested that McGuire be walled off, but that this request was never acted upon. See J.A. at 197. Because it was reasonable for the district court not to credit Lord's post hoc letter to McGuire as evidence that McGuire had previously been walled off from involvement in the civil investigation, it was also reasonable for the district court to conclude that McGuire had not properly been walled off.

Finally, regarding the district court's conclusion concerning the identity of the records sought in the criminal subpoena and those sought in an earlier civil subpoena, appellant contends that this identity was not surprising because the civil and criminal investigations involved the same underlying conduct. This contention, however, is somewhat, if not entirely, inaccurate. Because the statute of limitations had apparently run on a number of the potential criminal charges, the criminal investigation was focused solely on whether B&T's conduct violated the Major Fraud Act, 18 U.S.C. § 1031, which prohibits fraud involving federal contracts valued in excess of $1 million.[8] The civil investigation, by contrast, focused more generally on whether B&T had fraudulently overcharged institutional customers, including federally funded libraries. Attachment A requested documents regarding B&T's sales practices not just with respect to government customers -- which would have fallen within the scope of the criminal investigation -- but also with respect to school and library customers -- which could only have been relevant to the civil investigation. See J.A. at 72 (Attachment A). In view of the fact that appellant used the same attachment in the criminal subpoena despite the fact that some of the documents being sought were evidently relevant only to the civil investigation, the district court was not unreasonable in concluding that appellant used an identical attachment for the purpose of circumventing the civil discovery stay.

_____

[8] The Major Fraud Act, unlike various other criminal statutes, has a seven-year, rather than a five-year, statute of limitations. See 18 U.S.C. § 1031(f).

10

Taking these three grounds for the district court's finding -- at least in the aggregate -- we cannot conclude that the district court's finding that appellant sought the subpoena in the criminal proceeding for the purpose of obtaining discovery for the civil proceeding was clearly erroneous.

In addition to contending that the district court erred in its original order quashing the subpoena, appellant alternatively contends that the district court erred in denying appellant's motion for reconsideration, which was submitted together with affidavits in which various members of the civil and criminal teams testified that members of the civil team did not participate in the decision to issue the subpoena.[9] Having reviewed the affidavits, however, we conclude that the district court did not clearly err by effectively discounting the affidavits in its order denying the motion for reconsideration, in light of the evidence discussed in its original order. Accordingly, because we conclude that the district court did not clearly err by leaving its initial finding undisturbed even after taking into account the evidence introduced together with the motion for reconsideration, we affirm the district court's order denying the motion for reconsideration.

IV.

Appellant alternatively contends that, even if the subpoena in the criminal proceeding was being sought for the purpose of obtaining discovery for the civil proceeding, the district court should not have quashed the subpoena because the subpoena was also being used for the legitimate purpose of obtaining information relevant to the criminal proceeding. We disagree.

A district court retains the power to quash a subpoena whenever "compliance [with the subpoena] would be unreasonable or oppres-

_____

[9] For purposes of this discussion, we assume that the district court did not consider the affidavits in its original written order quashing the subpoena, despite the fact that the motion for reconsideration appears to have been filed just before the written order actually issued. To the extent that it did consider the affidavits, however, our ultimate conclusion that the district court did not clearly err by refusing to credit the affidavits is unaffected.

11

sive." Fed. R. Crim. P. 17(c). A subpoena will ordinarily issue whenever there is a "reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." United States v. R. Enters., Inc., 498 U.S. 292, 301 (1991). When such a showing of relevance can be made, a subpoena will issue even if the subpoena is also being sought for another, illegitimate purpose. **10** See Under Seal, 714 F.2d at 350 ("Once it is shown that a subpoena might aid the grand jury in its investigation, it is generally recognized that the subpoena should issue even though there is also a possibility that the prosecutor will use it for some purpose other than obtaining evidence for the grand jury.").**11** A subpoena should therefore only be quashed when the illegitimate purpose is the "sole or dominant purpose of seeking the evidence." Id.**12**

In this case, the district court found only that the government was "attempting . . . to use the criminal process of the grand jury subpoena to obtain documents for use in the California civil action"; the court made no finding that the Neblett subpoena would produce information relevant to what, in fact, it described as a"moribund" criminal investigation. J.A. at 280. Based on the record before us, we cannot conclude that the district court's essential finding that the government sought the criminal subpoena solely for the purpose of obtaining evidence for the civil proceeding was clearly erroneous. As noted above, many of the documents sought in Attachment A related to B&T's sales to school and library customers, which could only have been rel-

_____

**10** In a case in which relevant information was being sought, but in which that information was nevertheless subsequently provided to civil attorneys, the proper redress would be sanctions for contempt. See Fed. R. Crim. P. 6(e)(2).

**11** In Under Seal, we noted that a prosecutor's affidavit that a subpoena was being sought for the purpose of obtaining relevant information could suffice to establish relevance. See Under Seal , 714 F.2d at 350. The district court in this case, however, chose not to credit the affidavits that were offered into evidence, see supra at 11, and we do not think that its decision was erroneous.

**12** Appellant's assertion that"there is no `sole or dominant purpose' test in this Court's cases," see Reply Br. of Appellant at 8, is therefore evidently incorrect.

12

evant to the civil investigation. <u>See supra</u> at 10. In addition, the criminal investigation already had most, if not all, of the documents sought in Attachment A, rendering any further attempts to obtain those documents by means of the subpoena largely, if not entirely, superfluous. J.A. at 263.

Appellant contends that, even if the district court correctly quashed Attachment A of the subpoena, it should nevertheless have allowed to stand the portion of the subpoena compelling Neblett himself to testify. We see no evidence in the record, however, to suggest that the district court clearly erred by failing to find that Neblett himself would provide evidence relevant to the criminal investigation, even if Attachment A would not. As counsel for appellant conceded at oral argument, Neblett was not involved in any way with sales by B&T pursuant to federal contracts, much less federal contracts large enough to fall within the scope of the Major Fraud Act, and instead was responsible only for sales to schools and libraries, including sales to the Richmond, Virginia, library -- the same library at which the relator in the civil case was formerly employed.

In the absence of sufficient evidence to the contrary, we conclude that the district court did not commit clear error in finding that the government sought the Neblett subpoena solely for the purpose of obtaining discovery for the civil proceeding. We therefore uphold the district court's decision to quash the subpoena without prejudice to the United States to return to the court with a renewed subpoena once the discovery stay in the civil <u>qui tam</u> action is lifted.

The judgment of the district court is affirmed.

<u>AFFIRMED</u>