# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————————

No. 05-3886

————————————

|  |  |
|---|---|
| * | |
| * | |
| * | |
| In re: Grand Jury Subpoenas Dated * | Appeal from the United States |
| February 28, 2002; March 26, * | District Court for the |
| 2003; and October 4, 2004. * | District of Minnesota. |
| * | |
| * | [PUBLISHED] |
| * | |

————————————

Submitted: April 19, 2006
Filed: January 4, 2007

————————————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

————————————

HANSEN, Circuit Judge.

Appellant John Doe Corporation (JDC)[1] appeals from the district court's[2] judgment holding that the Government did not improperly use grand jury materials as

————————————

[1]All materials in this appeal were filed under seal to protect the secrecy of the grand jury investigation and the privacy of those involved. In order to publish this opinion, yet maintain the secrecy, no identifying names will be used and pseudonyms have been substituted as required.

[2]The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

part of a criminal investigation into JDC and a civil investigation into one of JDC's independent sales representative companies, XYZ; the district court's determination that it was not improper for the Department of Justice to disclose grand jury materials to another Department of the Government through *ex parte* orders issued by the district court without giving notice to JDC; and the district court's refusal to quash any of the subpoenas issued by the grand jury to JDC. After careful review, we affirm in part, dismiss in part, and remand in part.

## I.

JDC is the target of a criminal investigation originated by a cabinet-level Department of the United States (the "other Department") into JDC's alleged violation of federal laws through the sale of restricted items. The investigation began in September 2000. XYZ is JDC's independent sales representative in question and was involved in arranging a sale. The lead agent in the criminal investigation is federal Special Agent Smith[3] of the other Department, who worked in conjunction with the United States Attorney's office in Minnesota, although he is not part of the Justice Department. As part of the investigation, a search warrant for JDC's headquarters was issued, and a search was executed in May 2001. The warrant and its supporting affidavit were unsealed three months later and revealed the federal laws claimed to have been violated. A grand jury subpoena was issued to JDC on February 28, 2002, seeking all documents related to JDC's contacts with a certain entity and all other individuals and entities in the same country. In response to this subpoena, more than 178,000 pages of documents were provided in April 2002 to the Assistant United States Attorney (AUSA) handling the case.

Shortly after the delivery of these documents, two representatives of the other Department met with an XYZ employee. A second grand jury subpoena was issued to JDC on March 26, 2003, requesting documents related to the shipping of certain

---

[3]This is not the special agent's real name.

items since January 1, 2001.  More than 30,000 pages of documents were produced in response to the subpoena, with approximately 24,500 pages sent directly to Special Agent Smith for review.

A third grand jury subpoena was issued to JDC in October 2004.  This subpoena repeated the request for documents related to a number of entities and asked JDC for documents related to correspondence between JDC and XYZ.  JDC sent its responses to Special Agent Smith.

In July 2003, a JDC employee in charge of compliance with federal laws was granted immunity and testified before the grand jury.  Special Agent Smith was present at a pretestimony interview the witness had with the AUSA, but was not in the grand jury room during the employee's testimony.  A newspaper story after the employee's appearance and testimony named the employee and the employee's position, discussed the purported purpose of the investigation, quoted representatives of JDC, and stated the purported nature of the government investigation and portions of what had occurred in the investigation to date.

The other Department informed XYZ of its intent to initiate an administrative proceeding against XYZ in August 2003.  Special Agent Smith was also in charge of this civil investigation for the other Department.  Formal civil administrative proceedings were initiated by the other Department in February 2004, alleging that XYZ conspired to commit violations of various laws by arranging the sale of restricted items – the same charges as leveled against JDC in the affidavit supporting the search warrant.

On April 6, 2004, the AUSA asked JDC to provide three documents that JDC had produced in response to the grand jury subpoenas to the other Department for use in the civil administrative proceeding against XYZ.  JDC refused, stating that it believed the documents were protected by Federal Rule of Criminal Procedure 6(e).

In May 2004, the AUSA asked JDC to send two other documents to the other Department, but JDC again denied the request. In February 2005, the Government made a third request for JDC to send several documents to the other Department. This request was also denied by JDC, citing Rule 6(e).

As part of its defense in the civil matter, XYZ asked to depose Special Agent Smith. The other Department agreed, but before the deposition took place the other Department moved to stay the civil proceedings against XYZ until the grand jury investigation was finished. The other Department contended that because Special Agent Smith was in charge of both the criminal investigation of JDC and the civil investigation of XYZ, it would be almost impossible for him to give deposition testimony without potentially disclosing grand jury secrets. JDC's counsel received a copy of the other Department's response to XYZ's opposition to the stay, and from that response JDC learned that the district court had granted the Government's *ex parte* request for orders allowing the Government to disclose to the other Department the documents that JDC had declined to voluntarily provide.

Upon learning of these *ex parte* orders, JDC filed a motion for contempt and a motion for access to the *ex parte* motions and supporting papers. The district court denied the motion for contempt, declined to grant any injunctive relief, denied the motion to quash, and made no mention of allowing JDC access to the *ex parte* materials. JDC appeals, arguing that the district court erred by finding no violation of Federal Rule of Criminal Procedure 6(e), by allowing the government to obtain *ex parte* orders without giving notice to JDC, and by not granting JDC any relief from the grand jury subpoenas.

## II.
### A. Notice of the Government's *Ex Parte* Motion

We first address JDC's argument that it was legal error for the district court to allow the Government to seek *ex parte* orders without giving notice to JDC, even

though JDC had specifically objected to the disclosure of the documents at issue. We review the district court's decision to disclose grand jury materials for abuse of discretion. In re Grand Jury Investigation, 55 F.3d 350, 354 (8th Cir.) (stating that a "decision to allow disclosure is entrusted to the substantial discretion of the district court, which must weigh the circumstances of each case" and that the district court's decision will only be overturned if the district court abused its discretion), cert. denied, 516 U.S. 917 (1995).

The need to preserve the secrecy of grand jury proceedings is well acknowledged and is in fact proscribed by the Federal Rules of Criminal Procedure. See generally Fed. R. Crim. P. 6(e)(2); Douglas Oil Co. of Calif. v. Petrol Stops Nw., 441 U.S. 211, 218-19 (1979); In re Grand Jury Proceedings Relative to Perl, 838 F.2d 304, 306 (8th Cir. 1988). Rule 6(e)(3) governs petitions to the district court for permission to disclose grand jury information. Relevant portions of the rule state that:

> A petition to disclose a grand-jury matter . . . must be filed in the district where the grand jury convened. Unless the hearing is ex parte–as it may be when the government is the petitioner–the petitioner must serve the petition on, and the court must afford reasonable opportunity to appear and be heard to: . . . (ii) the parties to the judicial proceeding; and (iii) any other person whom the court may designate.

Fed. R. Crim. P. 6(e)(3)(F).

In the instant case, the Government was the petitioner and filed the petition to disclose grand jury matters *ex parte* – an action clearly permitted by Rule 6(e)(3)(F). The rule also clearly exempts *ex parte* hearings from the notice provisions. JDC's reliance on In re United States, 398 F.3d 615, 619 (7th Cir. 2005), to support its argument that lack of notice is legal error is misplaced. The court in that case affirmatively upheld the district court's right to allow *ex parte* proceedings without providing notice to any other party. Id. (noting that the 1983 amendments to Rule 6(e) "explicitly authorize ex parte proceedings when the United States is the petitioner").

In these situations, the district court is to use its abundant discretion to determine if notice should be given.  Id.; see also In re Grand Jury Investigation, 774 F.2d 34, 37 (2d Cir. 1985) (denying claim that the district court erred by granting an *ex parte* motion under Rule 6(e) without providing notice and an opportunity to be heard to appellants), overruled on other grounds, 481 U.S. 102 (1987).  Here there was no misapplication of the Rule, as JDC argues, because the rule's plain language permits the district court to allow the Government to proceed *ex parte*.  Thus, the question before us does not involve one of legal error, but rather whether or not the district court abused its discretion in allowing the Government to proceed *ex parte* without giving JDC notice and an opportunity to be heard.[4]

"The United States Supreme Court has consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  In re Grand Jury Proceedings Relative to Perl, 838 F.2d at 306 (internal marks omitted).  Particularly when a grand jury investigation is ongoing, district courts have broad discretion in taking action to protect the secrecy of that investigation.  See In re Grand Jury, 103 F.3d 1140, 1145 (3d Cir.) ("*Ex parte in camera* hearings have been held proper in order to preserve the ongoing interest in grand jury secrecy."), cert. denied, 520 U.S. 1253 (1997).  In a case involving access to a Government *ex parte* affidavit, our sister circuit rejected arguments that unique circumstances, a prolonged period of investigation, and the fact that the nature of the investigation had already (at least in part) been made public was enough to reverse the district court's decision denying access to the *ex parte* affidavit.  In re Grand Jury Subpoena, 223 F.3d 213, 219 (3d Cir. 2000).  The court rejected the argument that the

---

[4]We would review for an abuse of discretion the district court's decision to allow disclosure of the grand jury material to the other Department. In re Grand Jury Investigation, 55 F.3d at 354.  However, JDC does not dispute the district court's decision to disclose, rather it focuses only on the court's decision to proceed *ex parte* without notice.  Accordingly, we do not question the propriety of the decision to disclose in this opinion.

district court abused its discretion, relying on "the acknowledged need for secrecy in grand jury proceedings" and the fact that the affidavit in question included "excerpts of witness testimony and documents obtained during the [ongoing] investigation." Id. We agree with this analysis. While *ex parte* motions do prevent a party from arguing on its own behalf, numerous courts have upheld them as part of the balancing act required to properly protect grand jury secrecy. See In re Sealed Case No. 98-3077, 151 F.3d 1059, 1075 (D.C. Cir. 1998); In re Grand Jury Proceedings, 33 F.3d 342, 353 (4th Cir. 1994); but see In re United States, 398 F.3d at 619 (noting that one situation where a district court could possibly abuse its discretion by allowing the Government to proceed *ex parte* without notice to interested parties might arise when the Government seeks to further its own interests in a civil suit). While the district court certainly could have exercised its discretion and required notice and a hearing, in this instance we do not find that it abused its discretion by not granting notice to JDC, particularly given the nature of the investigation in question, the fact that the documents being sought could at least arguably have been considered matters before the grand jury, that the Government limited its request to a very small number of documents out of the thousands produced, that the other Department was not seeking to use the documents against JDC, and the fact that the grand jury investigation was ongoing.

JDC also argues that it was legal error for the district court to fail to grant it access to the *ex parte* motions and supporting papers. The Government did not oppose JDC's motion for access to the *ex parte* materials, but the district court did not, apparently, consider the stipulation. JDC should have renewed its motion before the district court for access to the materials and asked for a ruling after the district court failed to address this issue when it dismissed JDC's motion for contempt. JDC did not, however, and instead asks this court to direct the district court to grant it access. Even though it appears that the Government did not contest JDC's motion for access to the *ex parte* materials, the proper court to grant or deny access to this information in the first instance is the district court, as it is in the best position to assess the overall

need for secrecy in this grand jury proceeding (if indeed it is still ongoing) and any potential impact from allowing access to JDC. As such, we remand this issue to the district court with directions to evaluate and address JDC's motion for access to the *ex parte* materials.

### B. Unauthorized Disclosure of Grand Jury Materials

JDC also contends that the Government violated Rule 6(e)(3)(B) through the unauthorized disclosure of grand jury materials separate and apart from the disclosures authorized by the district court's *ex parte* orders. Specifically, it contends that the use of Special Agent Smith as the lead investigator on the simultaneously conducted civil investigation of XYZ and criminal investigation of JDC was improper because Special Agent Smith had access to grand jury materials as part of the criminal investigation that he would not have had access to had he solely been investigating the civil matter. JDC argues that, at a minimum, it established a prima facie case of a violation by Special Agent Smith and was entitled to an evidentiary hearing on its claim. The district court disagreed and dismissed JDC's motion, holding that in the absence of any evidence of misuse of the materials by Special Agent Smith, there were no grounds to find a violation of Rule 6(e).

"When considering a district court's ruling regarding a rule of criminal procedure, we review the district court's legal conclusions de novo and its findings of fact for clear error." United States v. Shepard, 462 F.3d 847, 861 (8th Cir. 2006) (internal marks omitted), cert. denied, No. 06-7647, 2006 WL 3245008 (Dec. 11, 2006); see also United States v. Pardue, 363 F.3d 695, 697 (8th Cir. 2004) (holding that a district court's interpretation of the applicability of a criminal rule of procedure was reviewed de novo); United States v. Olsen, Nos. 93-30186 & 93-30353, 1995 WL 46187, at *1 (9th Cir. Feb. 6, 1995) (unpublished) (noting that a decision regarding whether or not material fell under the protection of Rule 6(e) was reviewed de novo as a mixed question of law and fact).

We first note that Rule 6(e) protects the secrecy of the grand jury in two similar, but distinct ways, through regulation both of the "use" and the "disclosure" of grand jury information. Disclosure, the sharing of information with another, is prohibited except in a few limited circumstances. Fed. R. Crim. P. 6(e)(2)-(3)(A); (e)(3)(E); see United States v. Archer-Daniels-Midland Co., 785 F.2d 206, 212 (8th Cir. 1986) (defining disclosure under Rule 6(e) as requiring that information be shared with another), cert. denied, 481 U.S. 1028 (1987); United States v. John Doe, Inc. I, 481 U.S. 102, 108-09 (1987) (same). In addition, the rule also limits how certain persons can "use" grand jury information that has been properly disclosed to them. Fed. R. Crim. P. 6(e)(3)(B).

Disclosure of grand jury materials is permitted to "any government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(A)(ii). How a person can use information disclosed to them under this rule is limited, as the information may be used "only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(B). Because JDC does not contend otherwise, we assume without deciding that Special Agent Smith was properly allowed access to the grand jury materials through his work as an investigator of the criminal matter. Thus, the issue of improper disclosure to Special Agent Smith is not before us on appeal; we must only determine if there was a violation regarding the limitations on the use of grand jury materials.

JDC argues that Special Agent Smith's simultaneous work as an investigator into the civil matter involving XYZ is itself enough to violate Rule 6(e). It contends that the use of a dual investigative agent violates the principle that a grand jury investigation should not be used as a form of civil discovery–arguing in general that it is a per se violation of Rule 6(e)(3)(B). See generally United States v. Sells Eng'g, Inc., 463 U.S. 418, 432 (1983) (noting that unfettered "disclosure to government

attorneys for civil use poses a significant threat to the integrity of the grand jury itself"). The district court disagreed, stating that there is no rule against the same investigator participating in both a criminal and civil investigation, and concluding that without any real evidence that Special Agent Smith misused any grand jury information, there was no violation of Rule 6(e).

We have not previously been presented with the issue of an investigator simultaneously working on both a civil and a criminal case. In <u>Archer-Daniels-Midland</u>, we held that it was not a violation of Rule 6(e)(2) (prohibiting disclosure) for an attorney who had been assigned to the criminal grand jury investigation to <u>later</u> be involved in a civil investigation into the same company and matter. 785 F.2d at 212; <u>see also</u> <u>John Doe, Inc. I</u>, 481 U.S. at 108-09 (holding that Rule 6(e)'s disclosure rule did not prevent a government attorney from working on a grand jury investigation and then <u>later</u> on a civil case involving the same matter, because "[t]he Rule does not contain a prohibition against the continued use of information by attorneys who legitimately obtained access to the information through the grand jury investigation"). The issue involved was whether the attorney had violated the rule regarding disclosure of grand jury materials by later being involved in litigating the civil case. <u>Archer-Daniels-Midland</u>, 785 F.2d at 212. The court held there was no disclosure violation because a disclosure required that information be transferred from one person to another, and in this instance a person was simply retaining information and not disclosing it. <u>Id.</u>; <u>see also</u> <u>John Doe, Inc. I</u>, 481 U.S. at 408-09 (quoting <u>Archer-Daniels-Midland</u>).

Turning to the more directly related issue of the use of grand jury material, the Supreme Court held in <u>Sells Engineering</u> that Government attorneys involved in a grand jury investigation could not provide uncontrolled access to grand jury information to their civil counterparts. 463 U.S. at 430-31. If the civil attorneys, who were not themselves involved in the grand jury investigation, wanted access to grand jury materials, the Government would have to get permission from the court before

that information could be disclosed for use in the civil matter.  Id. (noting that "[i]f, in a particular case, ordinary discovery is insufficient for some reason, the Government may request disclosure").  Thus, while the grand jury disclosure rules do not prevent the same Government attorney from working on both a criminal and a civil investigation, the criminal prosecutor may not disclose material to his civil litigation colleagues without court authorization.  That is exactly what occurred here when the Justice Department's criminal prosecutor went to the district court and received permission to disclose various documents to another Department's civil attorneys.

As we noted, the rule preventing disclosure of grand jury material, Fed. R. Crim. P. 6(e)(2)(B), differs slightly from the one at issue here, which prevents those to whom information has been properly disclosed from using information for any purpose other than to assist an attorney in upholding federal criminal laws, Fed. R. Crim. P. 6(e)(3)(B).  We have assumed, *ante*, that Special Agent Smith was properly granted access to grand jury materials as an investigator assisting an attorney in a criminal investigation.  However, unlike attorneys, those to whom information has been disclosed to assist in a criminal investigation have a further limitation, and they are prevented from using the information for any other purpose.  Fed. R. Crim. P. 6(e)(3)(B).  A prohibition against using information is not violated just because a person has access to the information.[5]  The fact that Special Agent Smith was also working on a related civil investigation, involving a different target, does not mean that he was necessarily availing himself of the grand jury information while

_____

[5]The word "use" is not defined in Rule 6(e), however it has been defined by the Supreme Court.  In Bailey v. United States, a case involving interpretation of the word "use" as found in 18 U.S.C. § 924(c)(1), the Court determined that "use" required more than mere possession, and that active employment must be shown in order to prove "use" of a firearm.  516 U.S. 137, 143-45 (1995).  The Court noted that the various dictionary definitions of the word "use" implied "action and implementation," something more than passive possession.  Id. at 145.

conducting that civil investigation. Simultaneous criminal and civil investigations into related companies (or the same company) are not uncommon. While most of the cases involving attorneys have involved subsequent, not simultaneous, criminal and civil investigations, no court has yet prevented such simultaneous involvement by an attorney or investigator, and we decline to do so in this instance on this record purely as a preventative measure.[6] If an attorney is not barred from legitimately participating in both the criminal and civil sides of the case, it does not seem logical that an investigator should be so barred in all circumstances. Subsequent investigations must comply with the same rules regarding grand jury secrecy as a simultaneous investigation. The secrecy rules do not cease to apply when a grand jury ends its investigation, even if there is no indictment. In re Grand Jury Proceedings Relative to Perl, 838 F.2d at 307 (noting that while the interests in grand jury secrecy may be reduced when a grand jury investigation has ended, they are not eliminated); see also Douglas Oil, 441 U.S. at 222 (stating that "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury had ended its activities"). Thus, the rationale behind the rules and the interest in protecting grand jury secrecy apply to both subsequent and simultaneous civil investigations. See Illinois v. Abbott & Assocs., Inc., 460 U.S. 557, 567 n. 11 (1983) (recognizing that "[e]ven after the conclusion of a particular grand jury's investigation, continued secrecy protects the reputations of the innocent and safeguards witnesses . . . [and] stringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries").

JDC relies heavily on a Fourth Circuit case upholding a district court's decision to quash a grand jury subpoena that it determined had been issued for improper purposes–to further civil discovery (which had been stayed) rather than a criminal

---

[6]Our declination to issue such a rule of law should not be construed as disapproving in any way the policies of various Government agencies which guard against potential violations of Rule 6 by "walling off" criminal investigators and prosecutors from simultaneous civil enforcement activities.

investigation. <u>In re Grand Jury Subpoena</u>, 175 F.3d 332, 337-38 (4th Cir. 1999). One of the three reasons given by the district court in that case to support the determination of an improper purpose was that the criminal investigator in the case had not been "walled off" from the civil investigation. <u>Id.</u> The other two reasons involved evidence that the criminal and civil prosecutors colluded on several matters and motions, and it was likely more than a "mere coincidence" that the criminal subpoena for documents mirrored an earlier civil discovery request. <u>Id.</u> In upholding the district court's decision, the court stated that none of the reasons alone were likely sufficient to quash the subpoena, but together they supported a finding that the district court had not clearly erred in determining that the grand jury investigation was a ruse for discovery in the civil matter. <u>Id.</u> at 338-39 ("Taking these three grounds for the district court's finding-at least in the aggregate-we cannot conclude that the district court's finding . . . was clearly erroneous."). In the instant case, while Special Agent Smith was not "walled off" from the civil investigation, there was no indication or finding by the district court of any of the other issues that were present in <u>In re Grand Jury Subpoena Under Seal</u>, or other similar problems. In the case at bar, the Government was involved in a legitimate criminal investigation of JDC, and there is no evidence of collusion with the attorneys investigating XYZ. The Fourth Circuit case does not support the proposition that the fact of a concurrent investigator, in and of itself, is enough to find a violation of the grand jury secrecy rules. In addition, we cannot ignore the fact that both the analysis and issue before our sister circuit are easily distinguishable. A court's determination that a grand jury subpoena was issued for an improper purpose differs greatly from our determination of whether or not the rules of grand jury secrecy have been breached.

Our reading of Rule 6(e) and the related case law leads us to the conclusion that even when a criminal investigator has properly been made privy to grand jury materials and is also involved in a related civil investigation, no per se violation of Rule 6(e)(3)(B) occurs. In order to violate the rule, there must be evidence that the

knowledge of matters before the grand jury held by the investigator has been put to use in some way other than to further the criminal investigation.

JDC contends that it produced sufficient evidence of misuse of grand jury information to warrant, at a minimum, an evidentiary hearing on the matter. At oral argument JDC conceded that there was no direct evidence of misuse of information by Special Agent Smith. In addition, most of the arguments advanced by JDC in support of its request for an evidentiary hearing have no bearing on how Special Agent Smith may have used the grand jury information that he was privy to, but instead simply support the premise that Special Agent Smith was in possession of grand jury materials–something the Government does not dispute. There is no evidence that Special Agent Smith used grand jury information as part of his work in the civil investigation. Without evidence that actual misuse has occurred, a court cannot find a violation of the rule. JDC has failed to produce evidence to establish a prima facie case of a violation of the rule, and as such the district court did not err in refusing to grant an evidentiary hearing. See In re Sealed Case, 250 F.3d 764, 770 (D.C. Cir. 2001) (stating that once a prima facie case of a Rule 6(e) violation is shown, ordinarily the district court must then order an evidentiary hearing); Blalock v. United States, 844 F.2d 1546, 1551 (11th Cir. 1988) (holding that if there is no prima facie case of a Rule 6(e)(2) violation, then "the court must dismiss . . . without an evidentiary hearing"). While we have reviewed the district court's interpretation of Rule 6(e)(3)(B) de novo, we review the ultimate decision that the Government did not violate the rule for clear error. Shepard, 462 F.3d at 861. Looking at the record as a whole, including the fact there is no direct or circumstantial evidence of misuse, we find no clear error in the district court's determination that no violation occurred and in its refusal to hold an evidentiary hearing.

## C. Quashing the Subpoenas

JDC's final argument on appeal is that the district court erred by denying its motion to quash the early subpoenas issued by the grand jury. JDC's motion focused

mainly on quashing the subpoenas as a remedy for the alleged Rule 6(e) violation. Our conclusion that there was no Rule 6(e) violation moots this requested remedy. However, JDC also briefly asked the court to quash the subpoenas due to the undue burden placed upon JDC by the requirement for continued compliance and the length of the investigation. JDC's appeal from the district court's denial of the motion to quash, as related to any alleged undue burden, is not properly before us. "An order of a district court denying a motion to quash a grand jury subpoena–that is, an order requiring compliance with the subpoena–is not immediately appealable." In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 914 (8th Cir.), cert. denied, 521 U.S. 1105 (1997); see also, Cobbledick v. United States, 309 U.S. 323, 327-28 (1940); but see United States v. Nixon, 418 U.S. 683, 691-92 (1974) (finding that the unique circumstances of the case allowed an exception to the rule so the President of the United States could appeal before being cited for contempt). The denial of a motion to quash a subpoena is not a final order reviewable by this court, as the right of review attaches only if the target of the subpoena fails to comply and is found in contempt. See Cobbledick, 309 U.S. at 327-28; In re Grand Jury Subpoena Duces Tecum, 112 F.3d at 914; In re Grand Jury Witnesses, 92 F.3d 710, 712 (8th Cir. 1996) (reviewing district court's denial of a motion to quash a grand jury subpoena after the targets were found in contempt); In re Three Grand Jury Subpoenas, 847 F.2d 1024, 1027-28 (2d Cir. 1988) (holding that a ruling on a citation for contempt is required for appellate jurisdiction, although the actual imposition of sanctions is not). Because JDC has not been held in contempt for failing to comply with the grand jury subpoenas, the issue is not ripe and we dismiss this claim for lack of appellate jurisdiction.

## III.

Accordingly, we dismiss JDC's appeal from the district court's denial of the motion to quash the subpoenas due to undue burden for lack of jurisdiction; we affirm the judgment of the district court finding no violation of Rule 6(e) and allowing the use of *ex parte* motions without notice; and we remand with instructions for the

district court to determine the propriety of allowing JDC access to the *ex parte* materials.

_____