PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.                                                    No. 03-4403

DAVID LYNN HATFIELD,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, Chief District Judge.
(CR-02-219)

Argued: January 23, 2004

Decided: April 23, 2004

Before WIDENER, MOTZ and GREGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Motz and Judge Gregory concurred.

## COUNSEL

**ARGUED:** Joshua Clarke Hanks, Assistant United States Attorney,
Charleston, West Virginia, for Appellant. Jonathan David Byrne,
Legal Research and Writing Specialist, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Charleston, West Virginia, for Appellee. **ON
BRIEF:** Kasey Warner, United States Attorney, Charleston, West
Virginia, for Appellant. Mary Lou Newberger, Federal Public
Defender, George H. Lancaster, Jr., Assistant Federal Public
Defender, Charleston, West Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

This is a case of an unannounced entry under the Fourth Amendment.

In this criminal case, the United States appeals from the district court's order excluding from evidence a pistol found in the pocket of the defendant upon his arrest on an unrelated charge by Wyoming County, West Virginia deputy sheriffs. The defendant was indicted for possession of the pistol by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court, however, concluded that the deputies violated the defendant's Fourth Amendment rights. The government appeals, and we vacate the order of the district court.

I.

During the evening hours of January 3, 2002, Wyoming County deputies Donald Cook and Jerry McClain went to David Lynn Hatfield's house near Baileysville, West Virginia, in order to serve a state felony warrant for Hatfield's arrest. Another deputy had originated the warrant, which was for the delivery of a controlled substance. The deputies, both in uniform, arrived at Hatfield's residence at about 8:00 p.m. in a marked patrol vehicle. Upon reaching the residence, Deputy McClain knocked on the door of Hatfield's home.

At the suppression hearing in the district court, Deputy McClain testified that after he knocked, "[he] heard a voice say, '[t]he door is open; come on in.'" McClain recognized the voice as that of Hatfield from three or four previous conversations over the years when he had come to know Hatfield, whose voice was "a little different from others, and [he] could tell [Hatfield's] voice." Upon hearing Hatfield's statement, Deputies McClain and Cook "opened the door and went on in" Hatfield's residence and immediately saw Hatfield on a couch about ten feet in front of them. Deputy Cook's testimony corroborated McClain's version of events. Neither Cook nor McClain announced their presence as law enforcement officers prior to entering Hatfield's residence. Deputy Cook did testify that he saw Hatfield, apparently through the door prior to getting inside.

After entering Hatfield's residence, the two deputies approached Hatfield, and McClain informed Hatfield that he and Cook had a warrant for Hatfield's arrest for delivery of a controlled substance. As he approached, McClain asked Hatfield if Hatfield had any guns on his person. Hatfield stated that he had a gun in his inside coat pocket. McClain patted Hatfield down and discovered a gun in Hatfield's inside coat pocket. The deputies also found prescription drug bottles in Hatfield's jacket pocket and pants pocket. Upon recovering the gun, an H & K .40 caliber pistol, the deputies placed Hatfield under arrest and handcuffed him, and Deputy McClain took Hatfield to the patrol vehicle outside the residence. Two other individuals were in Hatfield's residence at the time the deputies arrived. As soon as Hatfield was arrested, these two individuals left Hatfield's residence.

Deputy Cook remained in the residence for fifteen minutes after McClain escorted Hatfield to the patrol vehicle. Cook retrieved only other items that had been discovered in plain view or during the search of Hatfield's person, including Hatfield's prescription drug bottles and a small amount of marijuana that was found on the coffee table after the deputies entered the residence. Deputy Cook did search each room in the residence, but he testified that he only looked into each room and did not open drawers or conduct an extensive search. In the kitchen, he found and seized various unmarked prescription bottles and 50 to 60 pills.

At the hearing in the district court, Hatfield testified that he did not say "come on in" to the deputies. Hatfield did state, however, that after the deputies entered his trailer, they did tell him that he had either said "come — the door is open," or "come on in." Hatfield also testified that he could not be certain of what the deputies said to him. Hatfield has a prior state felony conviction for possession of a controlled substance with intent to deliver.

## II.

A federal grand jury indicted Hatfield on the charge of being a felon in possession of a firearm, the .40 caliber H & K pistol, in violation of 18 U.S.C. § 922(g)(1). Hatfield filed a motion to suppress any evidence seized by the deputies after their entry into Hatfield's residence. In his motion, Hatfield contended that the deputies violated his

constitutional rights by failing to identify themselves as law enforcement officers before entering his residence. The district court held a hearing on the motion to suppress on February 11, 2003.

Following a suppression hearing, the district court made the following written findings of fact, which are not clearly erroneous and are supported by the record:

### I.   Findings of Fact

On the evening of January 3, 2002, Wyoming County Sheriff's Deputies Cook and McClain went to the residence of the defendant in Wyoming County, West Virginia, to execute a state felony warrant for the arrest of the defendant. Upon their arrival, the deputies knocked on the door of the defendant's residence but did not announce their identities or purpose, although no exigent circumstances prevented them from doing so. A male voice from inside the defendant's residence replied to the knock, "The door is open; come on in." Deputy McClain, who had spoken to the defendant several times in the past, recognized the voice coming from the defendant's residence as the voice of the defendant. This invitation to enter was a voluntary act upon the defendant's part.

Still without announcing their identities, purpose, or authority the deputies opened the closed but unlocked door of the defendant's residence and entered, finding the defendant seated upon his couch in plain view of the doorway. After entering the residence, the deputies explained to the defendant that they held a warrant for his arrest. Prior to advising the defendant of his Miranda rights, Deputy McClain asked the defendant if he possessed any weapons. The defendant replied that he had a gun in his coat pocket. The deputies then conducted a search of the defendant's person and found in his coat a .40 caliber handgun. That handgun forms part of the evidentiary basis for the indictment in this case, which charges the defendant with being a felon in possession of a firearm. (Footnote omitted.)

On April 11, 2003, the district court granted Hatfield's motion to suppress. *United States v. Hatfield*, No. 5:02-00219-01, slip. op. (S.D. W. Va. Apr. 11, 2003). The district court concluded that what is known as the "knock-and-announce" rule in *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997), and *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995), applied to the deputies' conduct. Under *Richards* and *Wilson*, under some circumstances, law enforcement officers must knock and announce their presence before attempting forcible entry of a dwelling. *Richards*, 520 U.S. at 387; *Wilson* 514 U.S. 934. The district court noted that the knock-and-announce rule allows law enforcement officers to forcibly enter a dwelling without knocking and announcing their presence only "under circumstances presenting a threat of physical violence" or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Hatfield*, slip op. at 4 (quoting *Richards*, 520 U.S. at 391). The district court determined that the government failed to produce any evidence that either of the two exigent circumstances were present at the time Deputies McClain and Cook entered Hatfield's residence. (J.A. 73)

The district court next determined that Hatfield's statement "come on in" did not manifest consent sufficient to allow the deputies to enter the house. According to the district court, Hatfield's statement was given in response to a knock only, not a knock and an announcement that law enforcement officers were at his door. If it upheld the entry, the district court reasoned, it would be creating an exception to the knock-and-announce rule that would transform the rule from knock and announce to "knock." (J.A. 74-75)

The district court concluded that Hatfield's invitation to the deputies to enter the residence was not an "intervening act of free will." (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Under the district court's analysis, the invitation was not intervening because it occurred after the deputies knocked on the door but before the deputies completed the constitutional violation by opening Hatfield's door and entering the residence. Based on the timing of the entry, the district court deduced that "a *Wong Sun* analysis is inapposite herein and may not serve to remove the taint from the challenged evidence." (J.A. 75) The district court decided that the firearm found on Hatfield was obtained through a violation of Hatfield's Fourth Amendment

Constitutional rights and ordered the firearm excluded from evidence. (J.A. 76)

III.

On May 9, 2003, the government filed its notice of appeal with the district court. While the notice of appeal was timely under Rule 4(b)(1)(B) of the Federal Rules of Appellate Procedure, the government did not file the certification required by 18 U.S.C. § 3731 with the district court until January 16, 2004, just one week before the case was argued in this court. Section 3731 of Title 18 of the United States Code provides, in pertinent part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

18 U.S.C. § 3731. The assistant United States attorney who presented the government's oral argument stated in oral argument that the failure to file the certification required by § 3731 was a "regretful oversight."

On July 15, 2003, Hatfield filed a motion to dismiss the government's appeal in this court. In his motion, Hatfield argues that the government's appeal should be dismissed because the failure of the United States to file the certification has prejudiced him. The specific prejudices, according to Hatfield, are the continued pretrial release restrictions and the burden of an impending trial.

In its response, the United States contends that the certification requirement is discretionary and not jurisdictional. The United States also argues that the nature of the district court's opinion and order granting Hatfield's motion to suppress, in particular the language in its opinion stating that the ruling "is essentially a death knell for the

government's case in this matter," is proof that the evidence suppressed is substantial proof of a material fact. The United States contends that its timely notice of appeal and the immediate initiation of internal procedures to gain permission from the Solicitor General to pursue this appeal are evidence that this appeal is not taken for the purpose of delay.

The United States is correct that the certification requirement in § 3731 is not jurisdictional. *In re Grand Jury Subpoena*, 175 F.3d 332, 337 (4th Cir. 1999), so holds. Our holding with respect to jurisdiction in *In re Grand Jury Subpoena* is in accordance with other circuits' case law. See *United States v. Bookhardt*, 277 F.3d 558, 562 (D.C. Cir. 2002); *United States v. Smith*, 263 F.3d 571, 578-80 (6th Cir. 2001); *United States v. Romaszko*, 253 F.3d 757, 760 (2d Cir. 2001) (per curiam); *United States v. Gantt*, 194 F.3d 987, 997 (9th Cir. 1999); *United States v. Salisbury*, 158 F.3d 1204, 1206 (11th Cir. 1998); *United States v. Bailey*, 136 F.3d 1160, 1163 (7th Cir. 1998); *United States v. Welsch*, 446 F.2d 220, 224 (10th Cir. 1971). In the case of a delayed filing, the appellate court may, within its discretion, hear the case despite the irregularity in the perfection of the appeal. See *Smith*, 263 F.3d at 578 ("[A] failure to timely file a certificate is an irregularity in perfecting the appeal."); see also Fed. R. App. P. 3(a)(2) ("An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal.").

In weighing the equities in a case where the certification was not filed as prescribed in § 3731, courts of appeals have utilized several factors including the date the certificate was filed, the reason for the lateness in filing the certificate, whether the government did engage in a conscientious pre-appeal analysis, whether the government acknowledges the importance of the certification requirement, any prejudice to the defendant, whether the appeal concerns issues that require appellate clarification, and whether the appeal should be heard in the interests of justice. See *Smith*, 263 F.3d at 578 (listing factors considered by courts of appeals in exercising their discretion to hear the appeal). Analyzing these factors, although all do not favor the government, we believe the equities of the case favor the United States. It is not disputed that the government did undertake the

required process to obtain permission from the Solicitor General to pursue this appeal. The attorney for the government also candidly admitted the oversight which led to the delay in filing the certification. More importantly, the issue raised on appeal is a novel legal issue and one which will further delineate the boundaries imposed by the Fourth Amendment on searches and seizures. Also weighing heavily in favor of entertaining the government's appeal is the fact that, unlike other circuits, before today we had not yet fully explicated the importance of the certification requirement, and the grave consequences resulting from the government's failure to timely file. And finally, whatever prejudice the defendant suffered from pre-trial release, it was not substantial enough to outweigh these other factors.

The equities of the case favoring the government, under the authority of F.R.A.P. 3(a)(2), we exercise our discretion, deny the defendant's motion to dismiss the appeal, and decide the case on the merits.* In doing so, however, we take this opportunity to emphasize the importance of the certification requirement and to serve notice on the government that future failures to timely file will not be taken lightly.

IV.

In *United States v. Cephas*, 254 F.3d 488, 493 (4th Cir. 2001), we explained that "[a] voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment." The factual scenario in *Cephas* is quite similar to the facts of the instant case. A passerby informed a Richmond, Virginia police sergeant that he had just come from an apartment where a 14-year-old girl was smoking marijuana with a man named Cephas. The passerby gave the officer the location of the apartment, and the officer went to the address to investigate. The officer knocked on the first door at the residence, a house divided into several apartments, and a

---

*The Fifth, Tenth, and Eleventh Circuits have dismissed, not on jurisdictional grounds, appeals by the government in cases where the government failed to comply with § 3731. See *United States v. Salisbury*, 158 F.3d 1204, 1207 (11th Cir. 1998); *United States v. Carillo-Bernal*, 58 F.3d 1490, 1497 (10th Cir. 1995); *United States v. Miller*, 952 F.2d 866, 875-76 (5th Cir. 1992). But see the string citation, p.7 *supra*.

woman answered the door, which opened into a common area. The officer inquired of the woman about Cephas, and she told him that Cephas rented the apartment at the top of the stairs to the right. The officer went to the door described by the woman and knocked. A man, later determined by the district court to be Cephas, opened the door.

Through the opened door, the officer could see a young girl sitting in the apartment and could smell a strong odor of marijuana. The officer asked Cephas if he could enter the apartment and speak with Cephas, but Cephas attempted to slam the door on the officer. The officer then forced his way into the apartment. Upon entry, the officer discovered eight or nine people in the apartment and what he believed to be a marijuana "roach" in the ashtray. Other law enforcement officers arrived, and they conducted a protective sweep of the apartment and patted down the persons found in the apartment. The officers obtained a search warrant and searched the apartment. Either during the search of the apartment pursuant to the search warrant or during the protective sweep, officers discovered "cigar blunts" containing marijuana, individually wrapped packages of crack cocaine, a .22 caliber pistol, a shotgun with no serial number, and a police scanner. Cephas was arrested, and a grand jury later indicted Cephas for possession of cocaine base, possession of marijuana, and three possession of firearms charges.

Cephas sought to suppress the evidence seized by the police on the basis that it was seized in violation of his Fourth Amendment rights. The district court granted Cephas's motion to suppress the evidence. We reversed on the grounds that Cephas voluntarily opened his door and allowed the officer to view the illegal activities occurring inside, namely the presence of a young girl in a room smelling of marijuana. We explained that

> [T]here is no evidence that Cephas's act of initially opening his door to [the officer] was anything but voluntary. . . . [The officer] testified that he next knocked on Cephas's door and the door then opened. Nothing in the record suggests the officer used his authority to command that the door be opened. Indeed, the district court found that Cephas was

not aware that it was a police officer who was knocking at his door until the door was already opened.

254 F.3d at 494.

In its opinion in the case at hand, the district court determined that the Supreme Court's opinions in *Richards* and *Wilson* established the rule that "any forcible entry into a dwelling must be preceded by both a knock and a notice of identity and authority unless it would be unreasonable for the government agents to announce their presence." (citing *Richards*, 520 U.S. at 387; *Wilson*, 514 U.S. at 934). The exceptions to this rule occur when government agents encounter circumstances that present a threat of physical violence and when evidence may be destroyed if agents announce their presence. *Richards*, 520 U.S. at 391 (citing *Wilson*, 514 U.S. at 936); see also *United States v. Wardrick*, 350 F.3d 446, 452 (4th Cir. 2003) ("We have recognized that, under appropriate exigent circumstances, strict compliance with the knock and announce requirement may be excused."). Applying the knock-and-announce rule in the instant case, the district court determined that the government failed to prove that Deputies Cook and McClain believed that Hatfield would present a physical danger to the officers or others or that he would destroy any potential evidence. Accordingly, the district court concluded that the deputies violated Hatfield's Fourth Amendment rights by entering Hatfield's residence without first announcing their presence and authority.

The district court next determined that Hatfield's statement "[t]he door is open; come on in" did not rise to the level of consent sufficient to validate a violation of a person's Fourth Amendment rights. The Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973), held that consent, if voluntarily given in the absence of duress or coercion, may serve as the basis for government agents to conduct a search which would not otherwise be authorized by the Fourth and Fourteenth Amendments. The question of whether the consent was voluntary is determined from the totality of all the circumstances. 412 U.S. at 227, 249. In declining to apply the Court's reasoning in *Bustamonte* to the case at bar, the district court stated that "the consent issue is in some ways a red herring" because Hatfield stated his consent to enter his dwelling to whoever was knocking at his door after only hearing a knock, not a knock and an announce-

ment of law enforcement authority. The district court reasoned that by accepting the consent argument advanced by the government it would create "an exception that turns the knock and announce rule into the knock rule." We review the district court's legal conclusions related to search and seizure issues de novo. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992).

We do not consider consent to be a red herring; it is the principal issue in the case. Hatfield, in his dwelling and free from any coercion or duress, heard a knock at the door and unequivocally stated "[t]he door is open; come on in." By his statement, Hatfield gave consent to enter to whoever was standing at his door. The persons knocking at the door could have been pollsters, salesmen, or, as in this case, officers of the law. See *United States v. Taylor*, 90 F.3d 903, 909 (4th Cir. 1996) ("'Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably . . . to walk up the steps and knock on the front door of any man's 'castle' . . . whether the questioner be a pollster, a salesman, or an officer of the law.'") (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964)). Hatfield's statement authorized the persons knocking at his door to "come on in." Thus, when the deputies opened Hatfield's unlocked door, they had been authorized to do so, just as Cephas voluntarily opened his door to the officer who knocked on his door. See *Cephas*, 254 F.3d at 494. They did not forcibly enter Hatfield's dwelling.

By its terms, the knock-and-announce rule applies when law enforcement officers attempt a forcible entry into a dwelling. See *Richards*, 520 U.S. at 387. Hatfield's consent, transmitted to Deputies Cook and McClain through his statement that "[t]he door is open; come on in," made the deputies' entrance into Hatfield's dwelling a permissible one. There is no distinction between a person voluntarily opening the door to his dwelling after hearing a knock and without ascertaining the identity of the person knocking and a person who, after hearing a knock and failing to ascertain the identity of the person knocking, speaks to the person knocking and tells the person "[t]he door is open; come on in."

We conclude that Hatfield's statement to the deputies was voluntary and amounted to an invitation to them to enter his dwelling regardless of the fact that Hatfield did not know who was knocking at his door. See *Cephas*, 254 F.3d at 494 (noting that a defendant can voluntarily open a door to his residence even if he does not know the identity of the person knocking on his door). Hatfield's consent renders the deputies' entrance into his dwelling a permissible one, and the knock-and-announce rule does not apply to bar the introduction into evidence of the .40 caliber H & K pistol obtained in this reasonable unannounced entry. We do not agree with the district court that there was any taint to dissipate under *Wong Sun*; the entry being reasonable, there is no taint to dissipate.

Finally, we explain that we do not create an exception to the knock-and-announce rule. Our warrant does not extend so far. We have, however, engaged in the task assigned to us by the Court in *Richards* and *Wilson*, at 936, as "left to the lower courts . . . of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Richards*, 520 U.S. 385 and 387. We are of opinion and hold that the unannounced entry in this case was reasonable and not in violation of the Fourth Amendment.

V.

Hatfield argues that we should affirm the order of the district court for the alternate reason that the deputy sheriffs in this case seized more than 50 items in what he terms an illegal general search. None of any such items was offered or received as evidence in this case, and we reject his contention. The pistol, for the possession of which Hatfield was indicted, and the object of the suppression motion, was delivered by Hatfield to the officers upon their simple request and not as a result of any general search, assuming for argument the same was undertaken. The order of the district court appealed from is accordingly vacated, and the case is remanded for action not inconsistent with this opinion.

*VACATED AND REMANDED*