**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Gregory McNEILL, Defendant–
Appellee.**

**United States of America,
Plaintiff–Appellee,**

v.

**Gregory McNeill, Defendant–Appellant.**

**Nos. 06–4444, 06–4489.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 29, 2006.

Decided May 2, 2007.

ARGUED: Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for the United States. Barry Coburn, Trout & Cacheris, P.L.L.C., Washington, D.C., for Gregory McNeill. ON BRIEF: Bonnie S. Greenberg, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for the United States. Matthew J. Mueller, Law Clerk, Trout & Cacheris, P.L.L.C., Washington, D.C., for Gregory McNeill.

Before WIDENER, NIEMEYER, and MOTZ, Circuit Judges.

Reversed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WIDENER and Judge MOTZ joined.

## OPINION

NIEMEYER, Circuit Judge.

Based on statements given by Gregory McNeill to FBI agents while in state custody, McNeill was indicted for two bank robberies. McNeill filed a motion to suppress the statements, contending that they were given following an illegal arrest by Baltimore City police. The district court granted the motion, concluding that the Fourth Amendment does not permit a warrantless arrest for a misdemeanor committed outside the officer's presence and that the misdemeanor for which McNeill was arrested was not committed in the presence of the arresting officer. The government filed this interlocutory appeal under 18 U.S.C. § 3731, seeking to reverse the district court's suppression order.

McNeill filed a cross-appeal, challenging the district court's order granting the government a motion for extension of time. He contends that the extension of time

improperly justified the government's otherwise untimely notice of appeal. He also requests that we dismiss the appeal because the government untimely filed the certification man-dated by 18 U.S.C. § 3731.

For the reasons that follow, we reject McNeill's challenge to our jurisdiction and deny his motion to dismiss the appeal. On the merits, we reverse the district court's suppression order because the arresting officer had probable cause to believe that McNeill committed the Maryland misdemeanor offense of harassment in his presence and therefore statements given during McNeill's subsequent custody were not the fruits of an arrest that violated the Fourth Amendment.

I

On January 7, 2003, at about 5:40 p.m., Tonya Malone called 911 from a 7–Eleven convenience store located on West Franklin Street in Baltimore, Maryland, to request police protection from Gregory McNeill. A Baltimore City police officer arrived within five minutes and observed Malone stepping out of a telephone booth with several children and McNeill standing next to her. Malone approached the officer, and McNeill followed right beside her. Because each was attempting to talk to the officer at the same time, the officer separated them, directing McNeill to stand about ten feet away, still within ear-shot of Malone.

The officer asked first for Malone's side of the story. According to the officer, Malone stated that "She wanted [McNeill] to leave her alone," but "that he keeps following her and messing with her." McNeill attempted to interrupt the officer's interview of Malone, prompting the officer to tell him to "chill out" while Malone spoke. Malone told the officer that she had obtained a state court protective

order against McNeill. Upon hearing this, McNeill became agitated and said, "I'm going to get you, bitch, for this." The officer thereupon placed McNeill under arrest for "assault by threat," as he explained, "because [McNeill] threatened [Malone] in the presence of me."

The officer then called the police dispatcher to verify whether Malone had, in fact, obtained a protective order against McNeill. The dispatcher told the officer that the police department's system contained no record of a protective order. In fact, however, a protective order did exist but did not appear in the dispatcher's system because the Maryland district court had entered the order only a few hours earlier.

While in custody at the Baltimore City police station in the Western District, McNeill gave local detectives information relating to several bank robberies, prompting the detectives to bring in the FBI to help with the investigation. A few hours later, McNeill gave FBI agents a statement about bank robberies in which he and others were involved. On the basis of the statements, McNeill was indicted in two counts for two bank robberies, one occurring on November 12, 2002, and another on December 14, 2002, in violation of 18 U.S.C. § 2113(a).

McNeill filed a motion to suppress the statements he gave in custody, alleging that they were the fruits of an illegal arrest under the Fourth Amendment. In granting McNeill's motion to suppress, the district court stated that the police officer did not have probable cause to believe that the Maryland misdemeanor of assault or harassment had been committed in his presence. Accordingly, "[a]ny and all statements made by Mr. McNeill after his arrest were obtained in violation of his Fourth Amendment rights to be free of

unreasonable seizure." The government filed a motion for reconsideration, and on March 21, 2006, the district court denied the government's motion to reconsider, again reaching the merits of the suppression issue:

Because Officer McMillan was not present at the time McNeill allegedly committed the alleged offense of harassment under Maryland law, a misdemeanor, he could not effect a warrantless arrest under the Fourth Amendment (as made applicable to the states by the Fourteenth Amendment), and, because the arrest violated the Fourth Amendment, the fruits of the arrest, including McNeill's statements regarding other crimes, [are] properly suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

From the district court's order denying the government's motion to reconsider, the government filed an interlocutory appeal pursuant to 18 U.S.C. § 3731. Section 3731 permits the government to appeal from an order suppressing evidence, so long as the U.S. Attorney certifies to the district court that "the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." The government's notice of appeal, which was filed on April 18, 2006, did not include the § 3731 certification. The government filed the certification on October 13, 2006, nearly six months after it filed its notice of appeal.

McNeill filed a cross-appeal challenging the timeliness of the government's appeal. He asserts that because the government did not obtain a valid extension for filing its motion for reconsideration, the motion for reconsideration was untimely and therefore did not extend the government's time to appeal the suppression order. Because a timely notice of appeal is a prerequisite to our jurisdiction under Federal Rule of Appellate Procedure 4, McNeill asks that we dismiss the government's appeal.

On our own initiative, we asked the parties also to brief the effect of the government's untimely filing of the certification required by 18 U.S.C. § 3731. *See United States v. DeQuasie,* 373 F.3d 509, 515 n. 6 (4th Cir.2004) (expressing an "assumption" that a § 3731 certification must be filed "within the thirty-day period in which the United States is permitted to notice an appeal under this statute").

II

We first address McNeill's cross-appeal challenging our jurisdiction. McNeill contends that the government's motion for reconsideration of the district court's June 9, 2005 suppression order was filed late and therefore that the motion for reconsideration did not have the effect of extending the time for appealing the suppression order. Thus, the notice of appeal filed on April 18, 2006, was untimely. *See* 18 U.S.C. § 3731 (requiring that interlocutory appeals of suppression orders be filed within 30 days after entry of the order). He also argues that the district court's post-appeal order dated April 24, 2006, granting the government an extension of time within which to file the motion for reconsideration was without effect because the government had already filed its appeal to this court.

The procedural facts are somewhat complex. The district court granted McNeill's motion to suppress by an order dated June 9, 2005. An appeal from that order would ordinarily have to be filed by July 9, 2005. *See* 18 U.S.C. § 3731. Before the appeal deadline, on July 5, 2005, the government filed a motion for reconsideration, which ordinarily would have extended the time for filing an appeal until the court disposed

of the motion for reconsideration. *See United States v. Ibarra*, 502 U.S. 1, 4 n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991); *United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir.1999).

Two problems existed, however. The government inadvertently filed all copies of its motion for reconsideration, including the original, with the district judge, rather than with the clerk of the court. Also, the date on which the motion for reconsideration was filed even with the district judge was beyond the 10 days allowed for filing motions for reconsideration under District of Maryland Local Rule 105.10, albeit within the 30–day time period for taking an appeal.

Both the court and the parties, however, proceeded in the usual course with the briefing and disposition of the government's motion for reconsideration. McNeill received the motion for reconsideration at the time it was filed with the district judge, and he requested two extensions of time for responding, which were agreed to by the government and granted by the court. McNeill's response to the motion for reconsideration, which was ultimately filed on August 1, 2005, took no exception to the filing date of the motion for reconsideration. Also, the district court ruled on the merits of the motion, despite the court's recognition that the motion had been filed with the district judge, rather than with the clerk, and that it had been filed beyond the 10 days required by local rule. The court noted in its opinion:

> According to the official clerk's docket, the motion for reconsideration was never filed. In a letter to chambers dated July 5, 2005, the Government forwarded what it described as "one courtesy copy" of the motion for reconsideration. In fact, however, a recent examination of the "copy" suggests that what was for-

warded to chambers may not have been a "copy" of the motion but the motion itself, inasmuch as the "copy" contained a "live" signature of the Government attorney on both the motion and the certificate of service. Under the local rules of this court, "any motion to reconsider any order issued by the Court *shall be filed with the Clerk* not later than 10 days after entry of the order." L.R. 105.10 (made applicable to criminal cases under L.R. 207) (emphasis added).

Nonetheless, the court did not impose a sanction for the deficiencies and proceeded to decide the motion for reconsideration on the merits. At the same time, the court filed the original copy of the motion for reconsideration with the clerk, which the clerk docketed on March 21, 2006 (over eight months after it had been filed with the judge).

Only after the district court circulated its ruling, which included its observations of the defective filing of the motion for reconsideration, did the parties react. The government filed a motion for extension of time to correct the mistake in filing the original motion with the judge rather than with the clerk, and the defendant opposed the motion for extension of time, but did not refer to the violation of the local rule. The court granted the extension by order dated April 26, 2006, which was after the government had filed its notice of appeal. McNeill cross-appealed from the court's April 26 order.

■ While the requirements that pleadings be filed with the clerk and within 10 days are mandatory, neither requirement denies the district judge the authority to accept motions for filing in his chambers beyond the time specified by the local rule. *See* Fed.R.Civ.P. 5(e) ("The filing of papers with the court as required by these rules shall be made by filing them with the clerk of court, *except that the judge may*

*permit the papers to be filed with the judge* ") (emphasis added); Fed.R.Crim.P. 49(d) (adopting the civil rules for filing of papers); Fed.R.Crim.P. 45(b) (authorizing the court to enlarge time periods imposed by the rules except for the time to take action under Rule 35). Thus, the district court had discretion to accept the motion for reconsideration without sanctioning the filing deficiencies. And this is precisely what the court did by acting on the merits of the motion, even while understanding that it had been filed after the local deadline and with the judge, not the clerk. The court acted well within its discretion. No one was prejudiced by the errors— each party had full notice of the other party's position and acted as if the papers had been timely filed with the clerk. In matters such as these, we give substantial deference to the district court's management of its affairs. We find no abuse of discretion in its accepting the government's filing of the motion for reconsideration and deciding it on its merits. *See U.S. Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 466–67 (4th Cir.1964) ("A court is, of course, the best judge of its own rules").

As for McNeill's argument that the district court had no authority to extend the time for filing the motion for reconsideration, Federal Rule of Criminal Procedure 45 provides to the contrary, expressly authorizing enlargement of time periods imposed by the Rules. The fact that the confirming order was entered after the time for appeal does not affect the court's pre-appeal willingness to decide the motion for reconsideration without enforcing the local rule deadline. Accordingly, we reject McNeill's jurisdictional arguments.

### III

■ In this case, we are once again presented with the government's failure to file timely the certification required for an interlocutory appeal under 18 U.S.C. § 3731. Section 3731 requires the U.S. Attorney to certify that the interlocutory appeal is not taken "for purpose of delay" and that the evidence at issue is important to the government's proof of its case. The government filed its appeal on April 18, 2006, but did not file its § 3731 certification with the district court until October 13, 2006, when the appeal was being briefed and less than two months before oral argument. We have previously expressed our assumption that the certification must be filed within the 30–day period which the United States has to notice an appeal under § 3731. *See DeQuasie,* 373 F.3d at 515 n. 6; *In re Grand Jury Subpoena,* 175 F.3d 332, 337 (4th Cir.1999).

Upon our request for supplemental briefing on this issue, McNeill now urges that the government's interlocutory appeal be dismissed for its failure to file the § 3731 certification timely, arguing:

> As we pointed out in our briefs, *Mr. McNeill has been incarcerated for years on this case, and remains in jail at this moment because of it.* Accordingly, he has suffered severe prejudice resulting from the government's failure to adhere to the certification requirement, a requirement that was unambiguously emphasized by this Court in two published opinions in 2004. The government has been on notice since that time of the importance of this Court placed on the certification requirement and the consequences of failing to adhere to it.

In cases decided in 2004, we addressed similar instances of the government's failure to file § 3731 certifications timely. *See DeQuasie,* 373 F.3d at 515–17; *United States v. Hatfield,* 365 F.3d 332–38 (4th Cir.2004). In *Hatfield* we admonished, "we take this opportunity to emphasize the importance of the certification requirement

and to serve notice on the government that future failures to timely file will not be taken lightly." *Hatfield,* 365 F.3d at 338. We now have two more cases raising the same question, despite our earlier warning—this case and *United States v. Newland,* No. 06–4219, which is being decided along with this case. Because of the importance of § 3731 certifications to the just and speedy disposition of criminal cases, we address the issue once again, yet more fully.

The facts in this case are familiar. Even though there is no suggestion that the government has acted in bad faith or attempted in any manner to delay McNeill's prosecution, its continuing administrative deficiencies have contributed to the failure to certify the appeals both in this case and in *Newland.* The Assistant U.S. Attorney who handled this case below, and who filed the notice of appeal, left the U.S. Attorney's office shortly after filing the appeal. He told his successor, however, that a § 3731 certification needed to be filed but noted erroneously that the certification "would be timely if filed at any time prior to oral argument." It was filed before oral argument but almost six months after the appeal was filed.

Despite the late certification, the government did engage in a conscientious pre-appeal analysis. Following entry of the district court's order denying reconsideration of its suppression order, the Assistant U.S. Attorney in charge of the case obtained approval from the U.S. Attorney to file this appeal. The U.S. Attorney in turn obtained approval from the Solicitor General of the United States, in accordance with internal Department of Justice policy. Following that process, the successor Assistant U.S. Attorney handling the appeal presented a § 3731 certification form to the U.S. Attorney for signature on September 14, 2006, for filing in this court.

The U.S. Attorney signed the certification. During the course of working on the reply brief, the U.S. Attorney noticed that the certification he had signed had been filed in this court, not the district court as required by § 3731. He promptly had the certificate filed in the district court, but this was now October 13, 2006, almost six months after the notice of appeal was filed. This prompted the U.S. Attorney to check with the Assistant U.S. Attorney handling a similar interlocutory appeal in *United States v. Newland,* No. 06–4219, and the U.S. Attorney learned that the § 3731 certification also had not been filed in that case. The U.S. Attorney then directed that a certification be filed in *Newland.*

Addressing the administrative lapses in complying with § 3731, the U.S. Attorney took several steps to improve the administration of interlocutory appeals under § 3731. The following is an excerpt from his affidavit outlining the steps that he initiated not only in these two cases, but also more generally in the District of Maryland and beyond:

9. On October 12, 2006, I sent an email message to the Chief of the Appellate Section, Criminal Division, U.S. Department of Justice. My message said that my attorneys had been unaware of the certification requirement and that I could not find any guidance about the issue in the United States Attorneys' Manual. I inquired whether the Criminal Division had provided any guidance to U.S. Attorneys about the need to file a § 3731 certification when appealing suppression orders.

10. I drafted a new addition to our Office Policy Manual establishing standards for handling affirmative criminal appeals on October 13, 2006.

11. On October 24, 2006, I sent an email message to all Maryland Assistant U.S. Attorneys with the final version of

our new written policy governing affirmative appeals. (See Attachment B) Our Manual now states that a § 3731 certification must be filed in the district court at the same time the notice of appeal is filed. The certification shall be included in the Joint Appendix, and the Statement of Jurisdiction in our appellate brief will state that the certification was filed and that the Solicitor General has personally approved the appeal. Our Office Policy Manual previously did not include any guidance concerning § 3731.

12. On October 27, 2006, I sent an email message to the Chief of the Appellate Section, Criminal Division, U.S. Department of Justice, stating that several of my office's most experienced attorneys were not aware of the § 3731 certification requirement and recommending that her office make it a routine practice to alert every Assistant U.S. Attorney who files an affirmative appeal about the need to comply with the statutory requirement. She agreed to do so.

13. On October 30, 2006, I forwarded our new written policy by email to every Fourth Circuit U.S. Attorney, with a message stating that it had recently come to my attention that some of my prosecutors were unaware of the certification requirement and recommending that each of them ensure compliance with it.

14. On November 21, 2006, I wrote to the Assistant Attorney General for the Criminal Division, U.S. Department of Justice, and the Solicitor General, explaining the problem and asking that the United States Attorneys' Manual be updated to mention the government's duty to file a § 3731 certification along with the notice of appeal in interlocutory appeals from orders suppressing evidence. (See Attachment C)

Oral argument in this case took place on November 29, 2006, as originally scheduled. The delayed filing of, and the supplemental briefing on, the § 3731 issue thus did not delay this case. The U.S. Attorney himself argued this appeal.

Section 3731 authorizes the United States to take interlocutory appeals from decisions or orders of a district court "suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding." But that authorization is conditioned on the U.S. Attorney's filing a certification in the district court "that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of fact material in the proceeding."

The authorization to file these interlocutory appeals is important to the prosecution of criminal cases because it permits the government to obtain appellate review, before jeopardy attaches, of trial court decisions suppressing what the government believes is evidence necessary to prove a crime. But because such an appeal necessarily disrupts trial court proceedings, the authorization contains an important limitation that is intended to protect defendants from *undue* delay. As we stated in *DeQuasie*,

> The certification requirement of § 3731 operates to ensure that before the United States interrupts a criminal proceeding (and thereby delays a defendant from obtaining resolution of the charges against him) by taking an interlocutory appeal, it has evaluated whether the appeal is warranted.

373 F.3d at 515. Thus, the filing of a § 3731 certification is not merely an administrative formality; it serves the important purpose of assuring the defendant's protection from undue delay.

██ Section 3731 does not give a deadline by which the government must file the

certification. We have assumed, however, without deciding until now, that because it is necessary to the perfection of an appeal, the government must file the certification within the 30–day period for appeal of the interlocutory order. *See* 18 U.S.C. § 3731; *DeQuasie*, 373 F.3d at 515 n. 6; *In re Grand Jury Subpoena*, 175 F.3d at 337. To give effect to the § 3731 protections and to remove doubt about when it must be filed, we now hold that the certification must be filed with the notice of appeal filed by the government under § 3731. This requirement assures that the government will have determined that the appeal is warranted under § 3731 *before* disrupting the trial process by noticing an appeal. In imposing this requirement, we join other courts that have imposed a similar requirement. *See, e.g., United States v. Salisbury*, 158 F.3d 1204, 1207 (11th Cir.1998); *United States v. Bailey*, 136 F.3d 1160, 1163 (7th Cir.1998).

The appropriate sanction for the failure to file a timely § 3731 certification is a more complex subject. We have already noted that such a failure does not deprive us of jurisdiction over the appeal. *Hatfield*, 365 F.3d at 337. Nonetheless, the failure constitutes an irregularity in perfecting the appeal, and therefore it is a ground "for the court of appeals to act as it considers appropriate, including dismissal of the appeal." Fed. R.App. P. 3(a)(2); *see also Hatfield*, 365 F.3d at 337. We accordingly have discretion to impose any sanction necessary to enforce the requirement of filing a § 3731 certification, including dismissal of the appeal. Several courts have imposed the sanction of dismissal. *See, e.g., Salisbury*, 158 F.3d 1204, 1207 (11th Cir.1998); *United States v. Carrillo–Bernal*, 58 F.3d 1490, 1497 (10th Cir.1995). Short of dismissal, however, such sanctions might be directed to the use of the evidence at issue, *cf.* Fed.R.Civ.P. 37(b)(2), or

to the punishment of the individual attorney failing to comply.

Because dismissal is an ultimate sanction that could adversely affect the public interest, it should be imposed only in the unusual circumstances where the government's conduct has essentially effected a forfeiture of its right to an interlocutory appeal or where the defendant has been so prejudiced by the government's failure that dismissal is the only just recourse. Moreover, we must keep in mind Congress' instruction that its authorization of interlocutory appeal be liberally construed. *See* 18 U.S.C. § 3731.

To be sure, any sanction must be tailored to the particular circumstances of a given case. In considering whether to grant a motion to dismiss, we have articulated various factors to consider, including: (1) how late the certification was filed; (2) the reason for its lateness; (3) whether the government engaged in "a conscientious pre-appeal analysis" and is appealing in good faith; (4) whether the government acknowledges the importance of the certification; (5) prejudice to the defendant; (6) the need for appellate clarification of novel or complex legal issues; and (7) "whether the appeal should be heard in the interests of justice." *Hatfield*, 365 F.3d at 337–38; *see also DeQuasie*, 373 F.3d at 516. At bottom, because the certification requirement ultimately serves to protect the defendant from *undue* delay, the most important factors to consider must relate to whether the government's failure to file the certification as required caused "actual substantial prejudice" to the defendant. *See DeQuasie*, 373 F.3d at 517 ("Courts are not likely to dismiss an appeal unless the defendant is able to show 'actual substantial prejudice' " (quoting *United States v. Smith*, 263 F.3d 571, 578 (6th Cir. 2001))).

In this case, we are presented with the unfortunate fact that after our repeated warnings in 2004, the government continued to neglect the statutory requirements as we construed them. At the least, the government's failures are shameful lapses in professionalism. To his credit, however, the U.S. Attorney himself stepped into this case to address the problem. He noted that the Assistant U.S. Attorneys involved in this case and in *Newland* were not personally aware of our 2004 decisions and that the requirements of those decisions were not reflected in the manuals used by Assistant U.S. Attorneys. He has acknowledged the importance of the certification requirement, and more importantly he has evidenced that acknowledgment by taking significant steps to prevent future lapses. He has notified all of his assistants as well as all other U.S. Attorneys in the Fourth Circuit; he has amended the U.S. Attorneys' practice manual for his office; and he has requested similar amendments to the manuals issued by the Department of Justice. Thus, *Hatfield* factor (4) weighs in favor of the government.

Factors (3), (6), and (7) also weigh in favor of the government. There is no suggestion that the government acted in bad faith or attempted in any way to delay the prosecution of McNeill. To the contrary, the suppression order in this case effectively ended the prosecution, and the U.S. Attorney averred that he believed an appeal should be pursued "because the district court had erred and suppressed evidence that was important evidence of the serious crimes alleged in the indictment"—the evidence necessary to prosecute two bank robberies. The fact that the Solicitor General has authorized this appeal also supports that conclusion. *See United States v. Romaszko*, 253 F.3d at 757, 760 (2d Cir.2001) (noting the Solicitor General's authorization confirmed that the prosecutor "carefully analyzed the case before deciding to appeal").

McNeill argues that factor (5) weighs in his favor in that the untimely filing of the certification caused him prejudice. He argues that his continuing confinement pending trial constitutes prejudice. He receives little benefit from his argument, however, because his continuing confinement would not have been obviated by the government's timely filing of a certification, for the appeal has proceeded on time despite the delay in filing the certification.

He does receive benefit from consideration of factors (1) and (2), as the certification was late by several months, and the reasons for its lateness were professional lapses.

On balance, we conclude that consideration of all of the relevant factors weighs in favor of the government, and accordingly we deny McNeill's motion to dismiss.

IV

In granting the motion to suppress, the district court concluded that no Maryland misdemeanor offense had been committed in the presence of the arresting officer and, therefore, the officer had no basis for a warrantless arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"); *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause"); *United States v. Dickey–Bey*, 393 F.3d 449, 453 n. 2 (4th

Cir.2004) ("If the crime is a misdemeanor, however, it must be committed in the officer's presence"). Concluding that the State's warrantless arrest of McNeill was illegal, the court suppressed the statements made by McNeill following his arrest.

The government contends that the Fourth Amendment does not restrict an officer's authority to make an arrest for a misdemeanor offense to circumstances in which the misdemeanor is committed in the officer's presence. It argues that the officer only needs probable cause to believe that an offense, even a misdemeanor offense, was committed. It notes that the Supreme Court did not reach the issue in *Atwater, see Atwater*, 532 U.S. at 341 n. 11, 121 S.Ct. 1536 ("We need not, and thus do not, speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests"), and that the statement in *Pringle* was simply dictum because the case involved the warrantless arrest of a defendant *for a felony* that occurred in the officer's presence. The government argues that, absent a more binding statement by the Supreme Court, this circuit is guided by *Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir.1974), in which we explained, "We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside of the officer's presence." *See also United States v. Humphries*, 372 F.3d 653, 658 (4th Cir.2004) (validating a felony arrest but citing *Surdyka* approvingly and noting that it sanctioned a warrantless arrest in a public place for "a misdemeanor committed outside an officer's presence").

Several other circuits have held that the Fourth Amendment contains no "in the presence" requirement, and none have reversed their position in the wake of *Atwater* and *Pringle*. *See Woods v. City of Chicago*, 234 F.3d 979, 992–95 (7th Cir. 2000); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir.1990).

■ In the end, however, we need not decide whether the Fourth Amendment contains an "in the presence" requirement for warrantless misdemeanor arrests because we find that the officer who arrested McNeill had probable cause to believe, based on the evidence he witnessed, that McNeill did commit the Maryland misdemeanor offense of harassment in his presence. Although the arresting officer stated that he was arresting McNeill for committing an "assault by threat"—which is not an actual offense in Maryland—the arrest is nonetheless valid if, based on the facts known to the officer, objective probable cause existed as to *any* crime. *See Devenpeck v. Alford*, 543 U.S. 146, 154–55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

Maryland law defines the misdemeanor offense of harassment as follows:

(a) A person may not follow another in or about a public place *or* maliciously engage in a course of conduct that alarms or seriously annoys the other:

(1) with the intent to harass, alarm, or annoy the other;

(2) after receiving a reasonable warning or request to stop by or on behalf of the other; and

(3) without a legal purpose.

Md.Code Ann., Crim. Law § 3–803 (emphasis added). As applied to this case, therefore, McNeill would have committed this offense if he (1) followed another person (2) with the intent to harass (3) after being warned (4) without a legal purpose.

While Maryland imposes an "in the presence" requirement for warrantless misdemeanor arrests, *see Stanley v. State*, 230 Md. 188, 186 A.2d 478, 481 (1962), it does not mandate that every element of the crime occur in the officer's presence, so long as the officer had sufficient evidence of all the elements and some were committed in his presence. For example, Maryland's highest court has explained:

> Where some evidence of the commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, he may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed.

*Davids v. State*, 208 Md. 377, 118 A.2d 636, 638 (1955). Thus, Maryland courts have held that a misdemeanor is committed in the officer's presence when the officer happened upon an ongoing crime, even though some elements of the crime occurred before the officer arrived. In *Robinson v. State*, 4 Md.App. 515, 243 A.2d 879, 886–87 (Md.Ct.Spec.App.1968), a police officer observed a cut lock on a fence gate and a broken door on a storehouse and then saw the defendant on the premises. The court concluded that this constituted the commission of breaking and entering a storehouse in the presence of the officer, even though the actual breaking and entering occurred before the officer arrived.

In this case, the officer knew upon arriving at the scene that Malone had called 911 to request protection from McNeill. Malone confirmed that McNeill was "following" her and "messing" with her and that she had resorted to obtaining a protective order against McNeill. Additionally, the officer observed McNeill follow Malone to the officer, albeit beside her, and attempt to interrupt the officer's interview of Malone—to the point of having to tell McNeill to "chill out." He also witnessed McNeill tell Malone, "I'm going to get you, bitch, for this."

These facts were more than sufficient to permit the officer reason-ably to conclude that before his arrival, and at the scene, McNeill had pursued and was continuing to pursue Malone, after being warned to leave her alone, in an aggressive and threatening manner. This constituted "following" "with the intent to harass" or "alarm." Not only was this pursuit manifestly harassing or alarming, it was also without a legal purpose. Like the officer encountering an ongoing breaking-and-entering in *Robinson,* the officer here had probable cause to believe that he was witnessing the ongoing misdemeanor offense of harassment which began before Malone obtained the protective order and continued in the officer's presence, culminating with the threat made by McNeill that he would "get" Malone. Accordingly, we find that the officer's arrest of McNeill did not violate the Fourth Amendment.

McNeill's subsequent statements made while in custody for harassing Malone therefore were not the fruits of an illegal arrest and should not have been suppressed. The district court's suppression order is accordingly

*REVERSED.*